379 So.2d 633 (1980)
Robert L. SHEVIN, Etc., et al., Petitioners/Appellants,
v.
BYRON, HARLESS, SCHAFFER, REID AND ASSOCIATES, INC., etc., et al., Respondents/Appellees.
Nos. 54405, 54406.
Supreme Court of Florida.
January 17, 1980.
*634 Jim Smith, Atty. Gen., Sharyn L. Smith, Sp. Asst. Atty. Gen., and Frank A. Vickory and Richard A. Hixson, Asst. Attys. Gen., Tallahassee, and F.R. Brock of Wildt, Quesada, Brock & Skinner, Jacksonville, for petitioners/appellants.
William H. Adams, III, and Stephen D. Lobrano of Mahoney, Hadlow & Adams, Jacksonville, for respondents/appellees.
Delbridge L. Gibbs and Gerald W. Weedon of Marks, Gray, Conroy & Gibbs, Jacksonville, for Delbridge L. Gibbs, as Attorney for Undisclosed Intervenors, on the Interpretation of § 119.011(1) Florida Statutes; Steven Carta of Smith & Carta, Fort Myers, for News-Press Pub. Co.; Dawson A. McQuaig, Gen. Counsel, and William Lee Allen, Asst. Counsel, Jacksonville, for City of Jacksonville; C. Gary Williams of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for Florida Society of Newspaper Editors; and George K. Rahdert of Shackleford, Farrior, Stallings & Evans, Tampa, for Times Pub. Co., amici curiae.
ALDERMAN, Justice.
We have for review the decision of the District Court of Appeal, First District, in Byron, Harless, etc., Assoc. v. State, 360 So.2d 83 (Fla. 1st DCA 1978), which has been certified to us as having passed upon a question of great public interest.[1] The question certified is whether a right of privacy exists under either the federal or the state constitution which renders Florida's Public Records Law, chapter 119, Florida Statutes (1975), unconstitutional as applied to the facts of this case. We answer the question in the negative and conclude that under the federal constitution a person's right of disclosural privacy is not as broad as was found by the district court and that under our state constitution no broader right is granted. Having jurisdiction, we also consider that part of the district court's decision which construed section 119.011(1), Florida Statutes (1975). We conclude that some of the papers in question are "public records," as defined by section 119.011(1) and that others are not, and we hold that the broad language of the district court's opinion expands the definition of "public records" beyond that intended by the legislature.

Factual Statement
Byron, Harless, Schaffer, Reid & Associates, Inc., an independent consulting firm *635 composed of psychologists trained in evaluating management personnel, was employed by the Jacksonville Electric Authority, commonly referred to as JEA, to conduct a nationwide search for potential applicants for the position of its managing director. The consultant was to recommend one or more persons qualified for the position. Those recommended, together with others who might apply without the prior recommendation of the consultant, were to be publicly screened by JEA before final selection. JEA's general counsel advised the consultant that only its written report would be a public record and that written notes prepared by the consultant for its own use would not be subject to disclosure.
The consultant contacted numerous individuals in managerial positions in electric utilities across the nation. Those individuals interviewed were uniformly assured that the interview was confidential. At the same time, JEA conducted a public search for applicants.
During its confidential search, the consultant, for its own use, made written notes of information and impressions obtained from the interviews conducted, and it also received resumes and letters from persons possibly interested in applying for the position. These and other papers, accumulated during the course of its search, identified the prospects and recorded their addresses, current positions in the utility field, biographical data, and comments by the prospects on their personalities, personal strengths and weaknesses, aspirations, work and living habits, and families. None of these papers were available to anyone not employed by the consultant. Most of the handwritten notes were destroyed, and most of the written submissions by those interviewed were returned as the search drew to a close.
Prior to the consultant's report to JEA, Schellenberg, a local television executive, asked to examine the consultant's papers relating to its search. His request was refused. Thereupon, Schellenberg and the attorney general applied for a writ of mandamus, alleging that these papers were public records under chapter 119 and, thus, were open to public inspection. Copies of those papers that had not already been destroyed by the consultant were impounded and sealed by the circuit court. Following an evidentiary hearing, the circuit court found the papers to be public records and issued a writ of mandamus.
The consultant appealed to the First District Court of Appeal, where it briefed and orally argued only the nonconstitutional issues of whether it was "acting on behalf of" JEA in the search, whether its handwritten notes constituted "public records," and whether the writ should have issued, in light of its promise of confidentiality to the persons interviewed. Upon examining the papers, the district court became concerned that the persons interviewed, not then before the court, might have a constitutional right of privacy. Deciding that the consultant could not effectively assert the rights of these persons, the district court entered an order summarizing the contents of the papers, omitting names and other identifying information, and inviting the identifiable prospects to intervene under pseudonyms. The order appointed counsel to represent those intervenors who desired to be represented. Additional briefs and oral arguments were received on the privacy claims of the intervenors.
In reaching its decision, the district court said that the 1975 amendment of section 119.011(2) makes it clear that a business entity is "acting on behalf of" a public agency if the services contracted for are an integral part of the agency's chosen process for making a decision on the question at hand. It held that the consultant was "acting on behalf of" JEA and was therefore an "agency" to which the Public Records Law applied. The district court found that the papers made and received by the consultant, despite their form, were public records because they were made and received "in connection with the transaction of official business" which the JEA employed the consultant to perform. The district court also found that the intervenors have a constitutionally protected right of "personhood," *636 which includes the right of disclosural privacy as to the personal information given by them to the consultant under an assurance of confidentiality. Concluding that public disclosure of the consultant's papers would deprive the intervenors of fundamental privacy rights secured by the United States and Florida Constitutions, the district court reversed the circuit court's issuance of the writ of mandamus.

Federal Constitutional Question
Petitioners argue that there is no authority for the district court's creation of a general federal right of personhood and that, even if there is a federal constitutional right of disclosural privacy, the Florida Public Records Law does not unconstitutionally infringe upon any such right when applied to the circumstances of this case. Respondents, on the other hand, contend that there is a distinct constitutional right of disclosural privacy which outweighs any interest of the state in requiring disclosure.
The district court's holding, that a federal right of privacy prevents public disclosure of the consultant's papers, is based on its determination that the Bill of Rights recognizes the fundamental integrity of persons which gives rise to a "privacy of personhood" that cannot be violated by government except to vindicate a compelling state interest. In essence, the district court formulated a general federal right of privacy the core of which is described as the "inviolability of personhood." We find that the district court's conclusion is unsupported by either the decisions of this Court or those of the Supreme Court of the United States.
While there is no right of privacy explicitly enunciated in the Bill of Rights, the Supreme Court has construed the federal constitution to protect certain privacy interests. These protected interests can be said to comprise the federal constitutional right of privacy. This right of privacy cannot be characterized as a general right because its application has been strictly limited. It has been characterized as consisting of three protected interests: an individual's interest in being secure from unwarranted governmental surveillance and intrusion into his private affairs; a person's interest in decisional autonomy on personally intimate matters; and an individual's interest in protecting against the disclosure of personal matters. Whalen v. Roe, 429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). The protection of a person's general right of privacy  his right to be left alone  is left to the law of the individual states. Katz v. United States, 389 U.S. 347, 350-51, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
The oldest and most widely understood of these privacy interests protected by the federal constitution is a person's interest in being secure against arbitrary governmental surveillance and intrusion into his private affairs. This privacy interest, basic to our concept of a free society, is rooted in the fourth amendment prohibition against unreasonable searches and seizures. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Katz; Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The parameters of this interest have been repeatedly delineated over the years by the Supreme Court, and, as a result, governmental intrusion upon activity safeguarded by this interest can be readily identified and remedied by the courts. The criminal law courts are often called upon to vindicate this interest.
The second privacy interest which has gained federal constitutional recognition is the right of an individual to be free from unjustified governmental interference in making various types of important personal decisions. This interest has been characterized as the right of decisional autonomy and is protected from governmental regulation, absent a narrowly drawn legislative enactment based upon a compelling state interest. Carey v. Population Services International, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977). This particular privacy interest, first explicitly recognized in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), has its foundation in the fourteenth amendment's "concept of ordered liberty." Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). *637 The personal rights encompassed are only those which are fundamental. Although the Supreme Court stated in Carey that the boundaries of this interest have not been marked, the Court has clearly established that an individual may make a decision relating to intimate personal activities and relationships such as marriage, Loving v. Virginia, 388 U.S. 1, 12, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); procreation, Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 541-42, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); contraception, Eisenstadt v. Baird, 405 U.S. 438, 453-54, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); family relationships, Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944); and child rearing and education, Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), without unjustified governmental interference. In these enumerated activities and relationships, there are limitations on government's power to regulate conduct substantively. Unwarranted governmental intrusion on decisions in these "fundamental" areas is a deprivation of the "liberty" secured by the due process clause of the fourteenth amendment.
The remaining privacy interest is the interest respondents argue applies to the present circumstances and prevents disclosure of the consultant's papers. That interest has been characterized as the individual's interest in avoiding public disclosure of personal matters and has been explicitly mentioned by the Supreme Court only twice, once in Whalen v. Roe and once in Nixon v. Administrator of General Services, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). This interest is the newest and the least defined. As recognized by the Fifth Circuit in Plante v. Gonzalez, 575 F.2d 1119 (5th Cir.1978), the Supreme Court has provided little specific guidance on this aspect of the right of privacy, and neither Whalen nor Nixon resolves the question presented.
In Whalen, a New York statute requiring physicians to identify patients obtaining certain prescription drugs and to record such information in a centralized computer file was challenged as being violative of the individual's interest in avoiding public disclosure of private matters. The act provided that the computerized information could only be used in judicial proceedings and made unauthorized disclosure a criminal offense. In reversing the district court's finding of unconstitutionality, the Supreme Court discussed the security precautions taken to prevent public disclosure of the data and concluded that public disclosure was unlikely. Having found public disclosure to be unlikely, the Court refrained from discussing the nature of this privacy interest and the standard to be applied when passing on its applicability.
In Nixon, the Supreme Court considered an alleged invasion of privacy by the federal act which provided that the Administrator of General Services would take custody of former President Nixon's papers and tapes. The Court affirmed the district court's decision upholding the constitutionality of the statute. Although stating that Nixon had a legitimate expectation of privacy in material covering "extremely private communications between [him] and, among others, his wife, his daughters, his physician, lawyer and clergyman, and his close friends as well as personal diary dictabelts and his wife's personal files," 433 U.S. at 459, 97 S.Ct. at 2798, the Court did not attempt to define the privacy interest in avoiding public disclosure of personal matters because it found that the case did not present the problem of public dissemination but was concerned with the viewing and screening of documents by government archivists. Just as in Whalen, the Court in Nixon acknowledged that such a privacy interest exists but did not describe or define it, nor did it establish a standard of review to be employed in determining when this interest has been transgressed. Despite announcing that a privacy interest which protects individuals from public disclosure of private matters does exist, neither Whalen nor Nixon explicitly held that the federal constitutional right of privacy precludes dissemination of private information by the government. The district court's reliance *638 upon Whalen and Nixon as support for its expansive right of personhood is misplaced.
We conclude that a person's right of disclosural privacy is not as broad as the district court has held. Until the Supreme Court gives some substance and life to this interest, we will be guided by that Court's decision in Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In that case, Davis sought damages and injunctive and declaratory relief under the Civil Rights Act, 42 U.S.C. § 1983 (1970), against city and county officials who had placed his name and picture on a police flyer of "active shoplifters" which was distributed to merchants. He had been arrested for shoplifting, but the charges had been dismissed thereafter. Davis contended that this governmental disclosure had deprived him of his constitutional right of privacy under the first, fourth, fifth, ninth, and fourteenth amendments. The Court rejected his argument, stating:
Respondent's case, however, comes within none of these areas. He does not seek to suppress evidence seized in the course of an unreasonable search. See Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 581 (1967); Terry v. Ohio, 392 U.S. 1, 8-9, 88 S.Ct. 1868, 1872-73, 20 L.Ed.2d 889, 898 (1968). And our other "right of privacy" cases, while defying categorical description, deal generally with substantive aspects of the Fourteenth Amendment. In Roe the Court pointed out that the personal rights found in this guarantee of personal privacy must be limited to those which are "fundamental" or "implicit in the concept of ordered liberty" as described in Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288, 292 (1937). The activities detailed as being within this definition were ones very different from that for which respondent claims constitutional protection  matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. In these areas it has been held that there are limitations on the States' power to substantively regulate conduct.
Respondent's claim is far afield from this line of decisions. He claims constitutional protection against the disclosure of the fact of his arrest on a shoplifting charge. His claim is based, not upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be "private," but instead on a claim that the State may not publicize a record of an official act such as an arrest. None of our substantive privacy decisions hold this or anything like this, and we decline to enlarge them in this manner.
None of respondent's theories of recovery were based upon rights secured to him by the Fourteenth Amendment.
424 U.S. at 713-14, 96 S.Ct. at 1166.
The principles involved in Paul and in the present case are strikingly similar. Both involve the release of information concerning an official act of government that is allegedly damaging to the protestants. In Paul, the Court found no privacy interest to protect, and in the present case we reach the same conclusion. The Supreme Court may some day breathe life into the privacy interest asserted by respondents, but, until that occurs, we conclude that there does not exist, under the facts of this case, a constitutionally protected interest sufficient to prevent the public from seeing the consultant's papers.
In reaching this conclusion, we have not overlooked the recent decision in Plante v. Gonzalez where the Fifth Circuit, although recognizing the Supreme Court's failure to provide guidance, nevertheless applied this interest and formulated a balancing test to be applied in examining the strength of this interest. There is nothing in Plante that persuades us that the facts of the present case establish a disclosural privacy interest that would keep the consultant's papers from public view.

State Constitutional Question
Petitioners also challenge the district court's conclusion that the Florida Constitution provides a right of disclosural privacy. Petitioners argue that neither the *639 plain language of the constitution nor the cases cited by the district court support its holding that a state constitutional right of disclosural privacy exists. More specifically, they say that all of the cases relied upon by the district court deal either with tort law, the narrowly defined federal constitutional right of privacy, or involve specific constitutional or statutory guarantees to associate freely or to be free from unwarranted governmental searches and seizures  none of which provide the requisite authority needed to find a state constitutional right of disclosural privacy. Respondents, in reply, argue that both article I, section 9,[2] and article I, section 12,[3] of the Florida Constitution guarantee a right of disclosural privacy.
We conclude that there is no support in the language of any provision of the Florida Constitution or in the judicial decisions of this state to sustain the district court's finding of a state constitutional right of disclosural privacy. We find no decisions, save for the one now under review, which have ever interpreted article I, section 9, the due process provision, as providing a right of disclosural privacy, and there is nothing in the wording of this section that persuades us that such an interpretation is correct. The district court's reliance on article I, section 12, the search and seizure provision, is also misplaced in that a reading of the complete section clearly indicates that the reference to "interception of private communications" was meant to apply only in the context of the law of search and seizure. This section deals only with the collection of information and not with its dissemination. The only privacy interest secured is a person's interest in being secure from unwarranted governmental intrusion, the same protection afforded by the fourth amendment to the United States Constitution. The Supreme Court's enunciation in Katz v. United States of the limited scope of the privacy interest protected by the fourth amendment is persuasive in our interpretation of article I, section 12.
The First District's citation of our decisions in In Re Grand Jury Investigation, 287 So.2d 43 (Fla. 1973); Hagaman v. Andrews, 232 So.2d 1 (Fla. 1970); and Cason v. Baskin, 155 Fla. 198, 20 So.2d 243 (1944), as supporting its conclusion that a state constitutional right of disclosural privacy exists, is misplaced because none of these cases provide the needed authority for such a holding. Our decision in Cason did not entail any constitutionally protected right of privacy. Rather, it dealt with the alleged invasion of the plaintiff's common law right of privacy. In Hagaman, we said nothing about a constitutional right of disclosural privacy; the only privacy right referred to was an asserted right of associational privacy. In In Re Grand Jury Investigation, we did say that there is a constitutional right of privacy, but our words must be kept in their proper context. In that case, we were concerned only with suppression of the contents of intercepted wire or oral communications, and our reference obviously was directed to the privacy interest secured by the fourth amendment and article I, section 12, to be free from unwarranted searches and seizures. Any possible confusion arising from these prior cases should have been dispelled by our later decision in Laird v. State, 342 So.2d 962 (Fla. 1977), wherein it was made clear that Florida has no general state constitutional right of privacy.

Statutory Question
In order to reach the state and federal constitutional questions, the district court *640 first had to address the issue of whether the consultant's papers were "public records" within the meaning of section 119.011(1).[4] In the course of holding that the consultant's papers were "public records," the district court in effect said that section 119.011(1) applies to almost everything generated or received by a public agency.
The initial briefs submitted by the parties on the certified question were not directed to the district court's interpretation of section 119.011(1). Subsequent to oral argument, however, we directed the parties to submit additional briefs on this point. The petitioners argue that the district court's broad interpretation comports with the legislature's intent and, thus, is the correct construction of the statute. Respondents contend that section 119.011(1) refers only to those documents which can be characterized as "final" or "formal" and that the district court's finding that the consultant's handwritten notes fall within the statutory definition of "public records" is erroneous. We conclude that the district court's interpretation of section 119.011(1) is too broad.
Prior to the enactment of section 119.011(1) in 1967, this Court, in Amos v. Gunn, 84 Fla. 285, 343, 94 So. 615, 634 (1922), said: "A public record is one required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done." This limited definition obviously embraced very few documents, most of which could be found in the official record book at the courthouse. In enacting section 119.011(1), the legislature broadened the class of public records. Notwithstanding the expansion of the concept, however, the legislature based its policy determination on the term "public records." That definition limits public information to those materials which constitute records  that is, materials that have been prepared with the intent of perpetuating or formalizing knowledge.[5]
To give content to the public records law which is consistent with the most common understanding of the term "record," we hold that a public record, for purposes of section 119.011(1), is any material prepared in connection with official agency business which is intended to perpetuate, communicate, or formalize knowledge of some type. To be contrasted with "public records" are materials prepared as drafts or notes, which constitute mere precursors of governmental "records" and are not, in themselves, intended as final evidence of the knowledge to be recorded. Matters which obviously would not be public records are rough drafts, notes to be used in preparing some other documentary material, and tapes or notes taken by a secretary as dictation. Inter-office memoranda and intra-office memoranda communicating information from one public employee to another or merely prepared for filing, even though not a part of an agency's later, formal public product, would nonetheless constitute public records inasmuch as they supply the final evidence of knowledge obtained in connection with the transaction of official business.
It is impossible to lay down a definition of general application that identifies all items subject to disclosure under the act. Consequently, the classification of items which fall midway on the spectrum of clearly public records on the one end and clearly not public records on the other will have to be determined on a case-by-case basis.
In this case, we have examined the consultant's papers sealed by the circuit judge and we conclude that the letters, memoranda, resumes, and travel vouchers made or received by the consultant in the course of his contract with JEA were intended to formalize the information contained *641 in them. Therefore, these materials constitute public records under section 119.011(1). The handwritten notes of the consultant, however, made during or shortly after his interviews with job prospects, are merely preliminary materials intended to aid the consultant when he later formalized the knowledge gained during the interviews.
Accordingly, the decision of the district court is quashed, and the cause is remanded for further proceedings consistent with this opinion.
It is so ordered.
BOYD, SUNDBERG and McDONALD, JJ., concur.
OVERTON, J., concurs specially with an opinion.
ENGLAND, C.J., concurs in part and dissents in part with an opinion.
ADKINS, J., dissents with an opinion.
OVERTON, Justice, specially concurring.
I concur in the result of the majority opinion. I fully concur with the construction and interpretation of the public records law and the definition of public records as contained in the majority opinion. I must disagree though with those portions of the opinion which categorically reject a constitutional right of disclosural privacy. However, I find that such right of disclosural privacy as may exist does not apply to public records as defined in this cause.
ENGLAND, Chief Justice, concurring in part and dissenting in part.
I concur with all aspects of the Court's decision, save the categorical rejection of a general right of privacy under the federal and Florida Constitutions.
The majority correctly notes that we rejected a general right of privacy under Florida's constitution in Laird v. State, 342 So.2d 962 (Fla. 1977). Laird, however, was decided without benefit of the Supreme Court's most recent pronouncements on privacy  Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), and Nixon v. Administrator of General Services, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977)  both of which announce an undefined general right of privacy outside the narrow areas previously delineated. I would not foreclose an examination of federal and state constitutional doctrines to evaluate privacy claims in the case before us.
Nor would I be deterred from an examination of Florida's Constitution by the fact that an express right of privacy was proposed as an amendment to the Constitution in 1978, but rejected by the voters.[1] The amendment was one of at least fifty amendments packaged by the Commission as "Revision No. 1" for a single "yes" or "no" vote by the voters. It is difficult for me to consider the rejection of this package of amendments as the rejection of a right of privacy (or any other specific proposal in the package, for that matter).[2]
ADKINS, Justice, dissenting.
I dissent. I believe that, in this instance, a sensible regard for the individual's concern for preserving highly personal and sensitive information from public scrutiny requires that the pertinent memos and other papers, representing the intimate feelings of the applicants toward family members, close friends and themselves, be protected against involuntary disclosure notwithstanding the provisions of Florida's Public Records Law, chapter 119, Florida Statutes. My position rests on the following observations and conclusions.

*642 A
Since Griswold v. State of Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), the "right of privacy" said to inhere in the "penumbras" of the first nine amendments has been an expanding concept. Initially, the personal interests in privacy had been argued and applied only in those cases where governmental "intrusions" had threatened sanctity of certain fundamental interests and activities including procreative, marital, and other familial practices. Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). Since then, however, the "zones of privacy" to which Justice Douglas referred have been continually expanding to protect individuals from government interference in areas clearly not related to the uniquely intimate activities associated with fundamental procreative and familial rights. See, Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). Although the majority identifies this additional privacy interest as the "individual's interest in avoiding public disclosure of personal matters," it bottoms its refusal to assert and protect this interest here on the grounds that the Supreme Court has provided "little specific guidance on this aspect of the right of privacy." The U.S. Supreme Court has recognized in both Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), and Nixon v. Administrator of General Services, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), that disclosural privacy is "part of the privacy interest which is founded, as held in Roe v. Wade, in the fourteenth amendment's concept of personal liberty." Nevertheless, because the United States Supreme Court was not forced to discuss the specific nature of this privacy interest in either of those cases, the majority declines to accept an interpretation of that privacy interest which is broad enough to encompass the rights of the job applicants here to keep this highly personal and intimate information from public perusal. Until the United States Supreme Court "breathes life into the privacy interest asserted," the majority "concludes" that there does not exist under these facts a constitutionally protected interest. I would not adhere to such a limited concept of this court's power to give necessary flesh to valuable interests recognized by the United States Supreme Court and derived from provisions in both the state and federal constitutions. If this court is of the view that the privacy interests here are of a type worthy of protection in light of the pertinent provisions of the state and federal constitutions, there is nothing in either Whalen or Nixon which prevents us from enforcing those rights in the face of a state statute which threatens them. I can envision few circumstances where the individual's interest in preventing involuntary disclosure of personal matters can be more acutely demonstrated nor where the nature of the information invokes a less compelling state interest in its disclosure. Here, the applicants gave highly intimate and personal information concerning their wives, children, and parents. The applicants believed that public revelation of the information would result in "dire consequences" to their professional lives. There is simply no compelling state interest in revealing intimate aspects of the personalities of unemployed prospects for government jobs, particularly when this information is induced by assurances of confidentially from a state agency.

B
Even if we were strictly limited in an application of privacy considerations to the original Griswold and Roe v. Wade range of procreative, marital, and familial activities, the statements and personal revelations made here are within the realm of "fundamental interests" worthy of protection. In Roe v. Wade, the Supreme Court recognized a high regard for personal autonomy in enumerated areas including "family . . child rearing ... and education." Here, the applicants disclosed the most intimate personal reflections upon their parents, wives, and children as part of a process leading toward the eventual relocation of the family in the pursuit of a new professional *643 career. The public revelation of the information given would most certainly threaten the present livelihoods of many of the applicants questioned. I do not see how the control over the education of one's children, recognized as requiring special protection in Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), can be considered more of a fundamental familial interest, than the determination of where the family will live and whether the head of the family will continue to be respected in his profession. The interests involved here are significantly related to the family so as to be included among the "fundamental interests" contemplated in Roe v. Wade, particularly in light of the recent Supreme Court recognition that "the outer limits of this aspect of privacy have not been marked." Carey v. Population Services International, 431 U.S. 678, 684, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977).

C
I believe that Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), which is cited by the majority as persuasive authority, is easily distinguishable. There, the state had a compelling interest in distributing to the public (merchants, etc.) a record of active shoplifters. Here, there is simply not the same interest in disclosure. Moreover, there was no similarity between the privacy interest in Paul and the familial and marital interests found worthy of protection in Griswold and Wade. Paul is not convincing authority in light of Nixon's recognition that a person's expectation of privacy must be one that society recognizes as "legitimate." Here, the expectation of privacy was premised upon express assurances that the information would be kept private.
I would hold that the doctrine of disclosural privacy does exist in Florida and remand the case to the district court of appeal with directions that it remand to the trial court for an application of disclosural privacy principles to determine which of the public records, if any, are entitled to disclosural protection under the constitution.
NOTES
[1] A notice of appeal was also filed which alleged that the district court passed on the constitutionality of chapter 119. The appeal and the petition have been consolidated.
[2] Section 9. Due process. No person shall be deprived of life, liberty or property without due process of law, or be twice put in jeopardy for the same offense, or be compelled in any criminal matter to be a witness against himself.
[3] Section 12. Searches and seizures. The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. Articles or information obtained in violation of this right shall not be admissible in evidence.
[4] Section 119.011(1), Fla. Stat. (1975), provides:

Definitions. For the purpose of this chapter:
(1) "Public records" means all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings or other material, regardless of physical form or characteristics, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency.
[5] Webster's Third New International Dictionary 1898 (3d ed. 1968).
[1] The 1977 Constitution Revision Commission proposed a new section 23 for article I of the Constitution to read:

Right of privacy.  Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein.
See also 6 F.S.U.L.Rev. 565, 671, 1117, 1176 (1978).
[2] None of the parties have raised the 1978 constitution revision process as a point for our consideration. Although it is not, therefore, before the Court and obviously was not considered by the majority, I was concerned with this point on my own and now deem it appropriate to record my tentative, personal view.