JOANOS, Judge.
Appellant George Frederick Atwell (At-well) seeks review of a trial court order which directed Sacred Heart Hospital of Pensacola (Hospital) to furnish Atwell with a copy of the medical record pertaining to his birth, but to withhold from that record any identifying information concerning At-well’s natural parents. The sole question raised in this appeal is whether section 395.017, Florida Statutes (1983), authorizes a hospital to edit or censor a patient’s records following a patient’s request for release of all patient records. We affirm, but certify the question to the Florida Supreme Court as a question of great public importance. Art. V, s. 3(b)(4), Fla. Const.
Atwell filed a complaint against the hospital alleging, among other things, that he was born at Pensacola Hospital, now Sacred Heart Hospital, on November 10, 1921; only one male Caucasian child was born at Pensacola Hospital on that date, and this child was delivered by Dr. W.C. Payne; and he [Atwell] was never adopted by his foster parents, who are now deceased. Atwell sought release of all information pertaining to his birth, pursuant to section 395.017(1), Florida Statutes (1983), and a declaratory judgment construing him to hold the status of an “adoptee” pursuant to section 63.162, Florida Statutes. The count which raised the question of the applicability of the adoption statute was dismissed by the trial court, and was addressed only collaterally in the parties’ briefs.
In a final judgment entered April 2,1986, the trial court held:
1. Plaintiff George Frederick Atwell was born November 10, 1921 at Pensacola Hospital, the predecessor of Defendant hospital. Plaintiff was the only male Caucasian child delivered at said hospital by W.C. Payne, M.D. on that date.
2. The Plaintiff, as a patient, is entitled to a copy of the medical records pertaining to his birth.
3. The Defendant shall furnish to Plaintiff, at Plaintiff’s expense, a copy of Plaintiff’s medical record which shall include the name, if any, given to Plaintiff at birth, but it shall not include the name ■ of his parents or any other identifying information concerning the natural parents of the Plaintiff.
We note at the outset that both parties to this controversy recognize the unique nature of medical records pertaining to a birth. Since two individuals are involved, the privacy interest and disclosure interest of both patients are in tension where, as in the instant case, one patient seeks release of the complete hospital record pertaining to the birth. Section 395.017 provides in relevant part:
(1) Any licensed facility shall, upon request, and only after discharge of the patient, furnish to any person admitted *1369 therein for care and treatment or treated thereat, ... a true and correct copy of all patient records, ... concerning such person, which records are in the possession of the licensed facility, ... The licensed facility shall further allow any such person to examine the original records in its possession, ... upon such reasonable terms as shall be imposed to assure that the records will not be damaged, destroyed, or altered.
[[Image here]]
(3) Patient records shall have a privileged and confidential status and shall not be disclosed without the consent of the person to whom they pertain, ...
(5) Patient records shall contain information required for completion of birth, death, and stillbirth certificates.
We recognize that pursuant to subsection (1) of the statute, a former patient is entitled to examine and to be furnished “a true and correct copy” of all records pertaining to his care and treatment. However, the disclosure provisions of subsection (1) must be considered in pari mate-ria with the privacy rights set forth in subsection (3). Subsection (3) bars disclosure of patient records without the consent of the person to whom they pertain, except in expressly defined circumstances not relevant to this case. See Mercy Hospital v. Department of Professional Regulation, Board of Medical Examiners, 467 So.2d 1058 (Fla. 3d DCA 1985); Hawkes, The Second Reformation: Florida’s Medical Malpractice Law, 13 Fla.St.U.L.Rev. 747, 754, n. 3 (1983).
Historically, individual zones of privacy have been a special concern of the federal courts, which have accorded particular recognition to the privacy interests inherent in intimate relationships and procreation. See, e.g., Paris Adult Theatre I v. Slaton, 413 U.S. 49, 66 n. 13, 93 S.Ct. 2628, 2640 n. 13, 37 L.Ed.2d 446, 462 n. 13 (1973); Roe v. Wade, 410 U.S. 113, 152-153, 93 S.Ct. 705, 726, 35 L.Ed.2d 147, 176-177 (1973); Eisen-stadt v. Baird, 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349, 362 (1972); Griswold v. State of Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).
Disclosural privacy was the subject of this court’s analysis in Byron, Harless, Schaffer, Reid and Associates, Inc. v. State ex rel. Schellenberg, 360 So.2d 83 (Fla. 1st DCA 1978). The issue was whether a consultant’s papers, which included intimate details of the personal and professional lives of men being screened for a top management position, were subject to public disclosure under Florida’s Public Records Act. In Byron, Harless, this court found “the Florida Constitution expresses the theme that disclosural privacy — the personal right of some control over the broadcast of intimate information concerning the self — is an aspect of person-hood which is to be protected, as are others, as fundamental.” 360 So.2d at 94.
Although the Florida Supreme Court later reversed this court’s decision in Byron, Harless, the supreme court decided the case in January 1980 before passage of Florida’s privacy amendment in November 1980.[1] Shevin v. Byron, Harless, Schaffer, Reid and Associates, Inc., 379 So.2d 633 (Fla.1980). One writer has suggested that as Florida courts interpret and apply the express right of privacy, they should remain cognizant of this court’s rationale in Byron, Harless, since “[pjassage of the privacy amendment weakens the prece-dential value of the supreme court’s opinion and supports a return to the ‘privacies of personhood’ rationale.” Newman, Privacy in Medical Information, 33 Univ.Fla. L.Rev. 394, 422-423 (1981).
Florida courts have employed a balancing of competing interests approach in deciding disclosure questions. For example, in Rasmussen v. South Florida Blood Service, Inc., 500 So.2d 533 (Fla.1987), the supreme court approved the Third District’s decision, which weighed the privacy interests of volunteer blood donors and so *1370 ciety’s interest in maintaining a strong volunteer blood donation system, against the interests of a plaintiff who contracted acquired immune deficiency syndrome (AIDS) from transfusions necessitated by injuries he incurred in an accident. See South Florida Blood Service, Inc. v. Rasmussen, 467 So.2d 798 (Fla. 8d DCA 1985). Similarly, in Argonaut Insurance Company v. Peralta, 358 So.2d 232 (Fla. 3d DCA), cert, denied, 364 So.2d 889 (Fla.1978), the privacy interests of persons who were not parties to a medical malpractice action were weighed against the plaintiffs interests in establishing proof of a community standard of care.
This case implicates the privacy and disclosure dichotomy that is present in the blood donor and medical malpractice cases. Since Atwell was never formally adopted, the information he seeks through release of his birth records could have been obtained from his birth certificate, were it not for the unfortunate circumstance that the information was never recorded with the Bureau of Vital Statistics. As a consequence, the trial court was required to weigh Atwell’s right to the records pertaining to his birth against the right of his natural mother to avoid disclosure of her medical records without her consent.
We conclude the trial court’s construction of section 395.017, which considers the mandatory disclosure provisions of subsection (1) in pari materia with the mandatory confidentiality provisions of subsection (3), is a correct and reasonable interpretation of the statute. In making this determination, we do not rule upon the applicability of the provisions of the “good cause” analysis set forth in section 63.162(4)(d), Florida Statutes (1983),[2] nor do we make any determination regarding possible violation of Atwell’s right to due process and equal protection in determining the identity of his parents. Neither of these questions was raised in this appeal. The only issue before this Court involved the interpretation of section 395.017, Florida Statutes (1983).
However, in recognition of the unique nature of the competing disclosure and privacy interests involved herein, we certify the following question to the Florida Supreme Court as a matter of great public importance:
DOES SECTION 395.017, FLORIDA STATUTES, REQUIRE A HOSPITAL, UPON PROPER PATIENT REQUEST, TO DISCLOSE COMPLETE PATIENT RECORDS WHEN TO DO SO WOULD COMPROMISE THE PRIVACY INTEREST OF A NON-REQUESTING PATIENT?
The final judgment is affirmed.
SMITH and BARFIELD, JJ., concur.

. Art. I, s. 23, Fla. Const., provides:
Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public’s right of access to public records and meetings as provided by law.

. s. 63.162(4)(d), Fla.Stat. (1983), provides:
(4) No person shall disclose from the records the name and identity of a natural parent, an adoptive parent, or an adoptee unless:
(d) Upon order of the court for good cause shown. In determining whether good cause exists, the court shall give primary consideration to the best interests of the adoptee, but shall also give due consideration to the interests of the adoptive and natural parents. Factors to be considered in determining whether good cause exists include, but are not limited to:
1. The reason the information is sought;
2. The existence of means available to obtain the sought-after information without disclosing the identity of the natural parents, such as by having the court, a person appointed by the court, the department, or the agency contact the natural parents and request specific information;
3. The desires, to the extent known, of the adoptee, the adoptive parents, and the natural parents;
4. The age, maturity, judgment, and expressed needs of the adoptee; and
5. The recommendation of the department or the agency which prepared the preliminary study, or the department if no such study was prepared, concerning the advisability of disclosure.