Ms. Denise M. Nieman Palm Beach County Attorney Post Office Box 1989 West Palm Beach, Florida 33402-1989
Dear Ms. Nieman:
You have asked substantially the following question:
In light of Florida's Public Records Law, is Palm Beach County authorized to obtain copyright protection and require license agreements for its Geographic Information Systems (GIS) maps and related data in order to regulate and authorize redistribution of these materials for commercial use?
The Board of County Commissioners of Palm Beach County has adopted a Geographic Information System (GIS) information policy to govern various aspects of use, liability and access to GIS maps and underlying geographic, geophysical and related data. Under this policy, the county has instituted a policy in which it asserts copyright authority over the expression of its GIS and related data. This plan also provides, in part, that the county controls the redistribution of these data through a series of licensing agreements. The county recently participated in the Attorney General's public records mediation process pursuant to section16.60, Florida Statutes, regarding the county's policy and the status of these records, and this opinion request results from that mediation process.
Pursuant to Article VIII, section 1(g), Florida Constitution:
"Counties operating under county charters shall have all powers of local self-government not inconsistent with general law, or with special law approved by vote of the electors. The governing body of a county operating under a charter may enact county ordinances not inconsistent with general law. . . ."
You have suggested that Palm Beach County, as a charter county, possesses the authority to adopt a policy authorizing the county to secure copyright protection in public documents and to regulate and authorize the redistribution of these materials for commercial use. However, it is my opinion that such a policy would conflict with Florida's Public Records Law and would, therefore, be inconsistent with general law.
The intent of the Legislature in enacting the Public Records Law and the impetus for adopting Article I, section 24, Florida Constitution, was the facilitation of public access to governmental records.[1] Chapter 119, Florida Statutes, the Florida Public Records Law, makes all records made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency open for inspection and copying by any person, and allows a specific fee for these copies.[2]
The term "public record" is broadly defined and encompasses "documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, data processing software, or other material, regardless of physical form [or] characteristics. . . ."[3]
It is clear that maps and related data produced by Palm Beach County for purposes of county business are public records. With the exception of section 119.084, Florida Statutes, discussed below, I am not aware of, nor have you brought to my attention, any statute that would generally allow counties or county agencies to secure copyrights for or license material produced by the county for official purposes.[4] Rather, these materials have been produced using public funds and, by law, are available to the public at the cost of copying without regard to the purposes for which the information is to be used.
In certain instances, the Legislature has restricted the commercial use of public records. For example, section 119.105, Florida Statutes, recognizes that:
"Police reports are public records except as otherwise made exempt or confidential by general or special law. Every person is allowed to examine nonexempt or nonconfidential police reports. No person who inspects or copies police reports for the purpose of obtaining the names and addresses of the victims of crimes or accidents shall use any information contained therein for any commercial solicitation of the victims or relatives of the victims of the reported crimes or accidents. Nothing herein shall prohibit the publication of such information by any news media or the use of such information for any other data collection or analysis purposes."
Section 119.084(2), Florida Statutes, authorizes any agency in this state to obtain a copyright on "data processing software" created by the agency and then to sell or license that software.[5] For purposes of this statute, an "agency" includes a county.[6]
The statute provides:
"(a) Any agency that has acquired a copyright for data processing software created by the agency may sell or license the copyrighted data processing software to any public agency or private person and may establish a price for the sale and a license fee for the use of such data processing software. Proceeds from the sale or licensing of copyrighted data processing software shall be deposited by the agency into a trust fund for the agency's appropriate use for authorized purposes. Counties, municipalities, and other political subdivisions of the state may designate how such sale and licensing proceeds are to be used. The price for the sale of and the fee for the licensing of copyrighted data processing software may be based on market considerations. However, the prices or fees for the sale or licensing of copyrighted data processing software to an individual or entity solely for application to information maintained or generated by the agency that created the copyrighted data processing software shall be determined pursuant to s. 119.07(1)."[7]
Thus, the Legislature has authorized a county to copyright and license data processing software created by that county. The statute also makes it clear that the use of proprietary software by agencies, that is, the use of software that is protected by copyright or trade secret laws, "must not diminish the right of the public to inspect and copy a public record."[8]
However, the records with which you are concerned do not appear to constitute "data processing software" as defined in section 119.084(1)(b), Florida Statutes, and thus are not subject to the copyright and licensing authorization contained in that statute. Further, any county ordinance or policy authorizing the copyright and licensing of other public records would appear to be inconsistent with the provisions of Chapter 119, Florida Statutes. Pursuant to Article VIII, section 1(g), Florida Constitution, a charter county may not enact ordinances that are inconsistent with general law.
Section 119.07(1)(a), Florida Statutes, specifically provides that "the charge for copies of county maps or aerial photographs supplied by county constitutional officers may also include a reasonable charge for the labor and overhead associated with their duplication." Thus, the statute recognizes that an additional charge may be made for material such as maps. In addition, section 119.07(1)(b), Florida Statutes, recognizes that a special service charge may be imposed "[i]f the nature or volume of public records requested to be inspected, examined, or copied pursuant to this subsection is such as to require extensive use of information technology resources or extensive clerical or supervisory assistance by personnel of the agency involved, or both[.]" Only those fees or charges that are authorized by statute may be imposed upon an individual seeking access to public records.[9]
In the absence of a statute authorizing the county to restrict the use of these public records by requiring license agreements for its Geographic Information Systems maps and related data, I am of the opinion that the county does not possess such authority.[10] To the extent that the county may receive copyrighted work in connection with its official business, the federal statute placing limitations on the reproduction of copyrighted material will control.[11]
In sum, it is my opinion that, in light of Florida's Public Records Law, Palm Beach County is not authorized to obtain copyright protection and require license agreements for its Geographic Information Systems (GIS) maps and related data in order to regulate and authorize redistribution of these materials for commercial use.
Sincerely,
Charlie Crist Attorney General
CC/tgh
[1] See, s. 119.01(1), Fla. Stat., and Art. I, s. 24(a), Fla. Const. 
[2] Sections 119.01 and 119.07(1), Florida Statutes. And see, Shevinv. Byron, Harless, Schaffer, Reid and Associates, Inc., 379 So.2d 633,640 (Fla. 1980), stating that for purposes of Ch. 119, Fla. Stat., a "public record" is "any material prepared in connection with official agency business which is intended to perpetuate, communicate, or formalize knowledge of some type. . . ."
[3] Section 119.011(1), Fla. Stat.
[4] There are, however, a number of statutes which authorize the state and various state agencies to apply for and secure copyrights. See,e.g., s. 20.43(8), Fla. Stat., authorizing the Department of Health to hold copyrights; s. 24.105(10), Fla. Stat., providing that the Department of Lottery has the authority to hold copyrights; s. 282.102(11), Fla. Stat., authorizing the State Technology Office to apply for, receive, and hold copyrights and to assist other agencies in the copyright process; s. 286.021, Fla. Stat., designating the Department of State as the agency which holds title to state copyrights; s. 334.049(1)(a), Fla. Stat., providing that the Department of Transportation may secure copyrights; and s. 1004.23(1), Fla. Stat., authorizing each state university to secure copyrights in its own name.
[5] "Data processing software" is specifically defined to mean "the programs and routines used to employ and control the capabilities of data processing hardware, including, but not limited to, operating systems, compilers, assemblers, utilities, library routines, maintenance routines, applications, and computer networking programs." Section119.084(1)(b), Fla. Stat.
[6] Sections 119.084(1)(a), and 119.011(2), Fla. Stat.
[7] Section 119.084(2)(a), Fla. Stat.
[8] Section 119.084(3), Fla. Stat.
[9] See, Op. Att'y Gen. Fla. 87-01 (clerk of court does not have authority to charge fee other than actual cost of making copy for providing copies of computer software programs in order to recover costs associated with writing programs).
[10] Cf., Op. Att'y Gen. Fla. 02-37 (2002) (school district may not require that production and copying of public records be accomplished only through a private company acting as clearinghouse for school district's public records information pursuant to contract between district and company); Op. Att'y Gen. Fla. 88-23 (1988) (in the absence of a statute specifically authorizing state attorney to recoup costs of producing training program, state attorney is not authorized to recoup such costs); Op. Att'y Gen. Fla. 86-94 (1986) (clerk of circuit court not authorized to copyright computer programs for financial and accounting functions).
[11] Pursuant to Art. VI, U.S. Const., the Supremacy Clause, federal law will prevail over state law to the extent of any conflict. Seegenerally, 17 U.S.C. s. 101 et seq., the federal copyright laws. Andsee, Op. Att'y Gen. Fla. 03-26 (2003) (federal copyright law, read together with Public Records Law, requires custodian to make maintenance manuals supplied pursuant to law available for examination and inspection purposes; however, custodian should refrain from copying such records in light of federal copyright protections).