906 So.2d 1220 (2005)
Beverly ROGERS and Martin Cohen, individually and on behalf of other similarly situated Florida voters, Appellants,
v.
Glenda E. HOOD, as Secretary of State for the State of Florida; Ed Kast, as Director of the Division of Elections, Florida Department of State, Appellees.
No. 1D04-4609.
District Court of Appeal of Florida, First District.
July 21, 2005.
Gary M. Farmer, Jr., of Freedland, Farmer, Russo & Sheller, P.A., Weston, for Appellants.
*1221 Charles J. Crist, Jr., Attorney General, and George Waas, Special Counsel, Tallahassee, for Appellees.
KAHN, C.J.
Appellants, plaintiffs below, seek review of a final order entered in favor of Appellees Glenda E. Hood, Florida's Secretary of State, and Ed Kast, Florida's Director of the Division of Elections. The issue on appeal turns on whether unused ballots from the 2000 presidential election in Florida are public records under the relevant statutory and constitutional provisions. The circuit court correctly determined that these unused ballots are not public records and, accordingly, denied all relief requested by appellants. We affirm the ruling in its entirety. Appellants, in their amended complaint, alleged causes of action for declaratory relief, injunctive relief, and for writ of quo warranto. These claims are interrelated, however, and each turns on whether the items sought are public records under Florida law.

Background
The final judgment here resulted from appellees' motion to dismiss and, accordingly, all well-pled factual matters in the amended complaint must be taken as true. See, e.g., Brewer v. Clerk of the Cir. Ct., 720 So.2d 602, 603-04 (Fla. 1st DCA 1998). The averments set forth here, therefore, have been gleaned from the amended complaint.
Appellants are registered Florida voters. Appellee Hood, is Florida's Secretary of State and oversees the Florida Department of State, an agency charged with providing state-wide coordination and direction for the interpretation and enforcement of election laws. Appellee Kast is the Director of the Division of Elections of the Florida Department of State.
As is widely known, certain Florida counties used punch card ballots in the 2000 presidential election. Appellants maintain that election officials in these individual counties still possess stocks of unused or unvoted punch cards from that election. Some years after the 2000 election, supervisors of election in various counties began, or prepared, to destroy the unused ballots, owing to lack of sufficient funds to store the ballots. Initially, certain local election officials took the position that the unvoted punch card ballots were public records and, accordingly, would not allow appellants or their representatives to take possession of the ballots. According to appellants, some local election officials claimed that appellee Hood had asserted the unvoted punch cards were public records. At some point in 2003, however, the Secretary of State took the position that unvoted punch cards are not public records. Appellants conclude that the Secretary of State, based upon her determination that the ballots are not public records, would be of the view that the unused ballots are subject neither to preservation or inspection, and may be destroyed.
Appellants, asserting that the unvoted punch cards have great historical value, wish to have the ballots delivered to the law library at Nova Southeastern University, an institution that, according to appellants, has agreed to take possession of the cards. As they put it, appellants wish to make these ballots available for "further study by interested scholars." Appellants also aver that a member of the New York State Assembly has expressed interest in "a scientific examination of the unused paper ballots from the 2000 general election in Florida." In addition, appellants identify a history professor at the University of Florida, Dr. Julian Pleasants, who has stated that the unused ballots from the 2000 presidential election have "significant historical and scientific value."
Based upon a fleshed-out version of the foregoing allegations, appellants sought a *1222 declaratory judgment that all unused and unvoted punch card ballots from the 2000 presidential election are public records under article I, section 24 of the Florida Constitution, and chapter 119.01 of the Florida Statutes, thus affording them a constitutional right to inspect the unused ballots. Appellants further sought a declaration that section 101.545, Florida Statutes (2003), governing retention and destruction of certain election materials, violates article I, section 24, of the Florida Constitution.
Appellees moved for a final judgment of dismissal. According to appellees' view as stated in the motion to dismiss, appellants had no standing to seek the relief requested because they could not allege a special injury different in kind from that of the general public. Appellees also argued, that despite being given several opportunities to amend their complaint, appellants had not stated a cause of action cognizable under Florida law. In particular, appellees argued "plaintiffs here are not being deprived of anything to which they are entitled as a matter of law." Appellees urged that the handling of unused or unvoted ballots is subject to legislative prerogative and, by enacting section 101.545 in 1977, the Legislature has acted. The result of this legislative action is that any or all of the 67 supervisors of elections may destroy unused ballots upon approval of the Department of State.
After hearing, the circuit court entered its final judgment concluding:
[T]he unused ballots from the 2000 presidential election are not public records. . . . The ballots are no more than blank forms for use in the now-defunct voting machines used in the past. This is property that the State can dispose of any way the Legislature directs.
The court also ruled that the Legislature has made a determination as to how such items may be disposed by enactment of section 101.545. Next, the court determined that article I, section 24, has no application in this case, and appellants have not identified any other constitutional or statutory provision providing them with any rights with regard to the punch card ballots. In addition to concluding that appellants had not stated a cause of action, the circuit court also found that the complaint fails to allege standing. In the penultimate paragraph of the order on review, the circuit judge stated:
The ultimate disposition of the unused ballots from the 2000 election [is] subject to legislative prerogative and the legislature has determined through passage of § 101.545, Fla. Stat., that the Supervisors of Elections may destroy them with the consent of the Secretary of State. The statute does not authorize the Secretary of State to order destruction of the unused ballots or punch cards where local election supervisors have not requested permission to do so. No other disposition is contemplated or mentioned in the statute. Plaintiffs have no statutory or constitutional rights regarding the ultimate disposition of these unused ballots.

Analysis
Florida's Sunshine Amendment, article I, section 24(a), of our constitution provides:
Every person has the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf, except with respect to records exempted pursuant to this section or specifically made confidential by the constitution.
The same constitutional provision, in a later subsection, provides that "[a]ll laws that are in effect on July 1, 1993 that limit *1223 public access to records or meetings shall remain in force." Article I, § 24(d), Fla. Const. Under our statutory law, "public records" include "all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, data processing software, or other material, regardless of the physical form, characteristics, or means of transmission, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency." § 119.011(1), Fla. Stat. (2003). The Legislature has declared Florida's policy that "all state, county, and municipal records shall be open for personal inspection by any person." § 119.01(1), Fla. Stat. (2003). If appellants are to succeed, they must rely upon these provisions of Florida law. The United States Supreme Court has recognized no constitutional duty on the part of the government to compel disclosure of records that the government has deemed either confidential or otherwise not subject to public disclosure. See Houchins v. KQED, Inc., 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978). "`The Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act.'" Id. at 14, 98 S.Ct. 2588 (quoting Potter Stewart, Or of the Press, 26 Hastings L.J. 631, 636 (1975)).
Under longstanding Florida law, a public record is "any material prepared in connection with official agency business which is intended to perpetuate, communicate, or formalize knowledge of some type." Shevin v. Byron, Harless, Schaffer, Reid & Assocs., 379 So.2d 633, 640 (Fla.1980). The determination of what constitutes a public record is a question of law. See State v. City of Clearwater, 863 So.2d 149, 151 (Fla.2003).
Here, the circuit court correctly determined that the unused ballots do not fit Florida's concept of public records because they do not, as required by the supreme court, "perpetuate, communicate, or formalize knowledge." Shevin, 379 So.2d at 640. Nothing could be more obvious than that a ballot becomes a public record once it is voted. At that point, the ballot meets the Shevin criteria in that the voted ballot, as received by the supervisor of elections in a given county, has memorialized the act of voting. For purposes of the public records analysis, however, the unused ballots, en masse, are no different than cases of blank paper held in a government office.
Moreover, the Legislature saw fit to make provision for retention and destruction of unused ballots by enacting section 101.545, Florida Statutes (1977). See Ch. 77-175, § 20, Laws of Fla. According to the statute, "[a]ll unused ballots. . . may, with the approval of the Department of State, be destroyed by the supervisor after the election for which such ballots . . . were to be used." The Legislature has chosen to treat unused ballots as a sort of surplus property and has delegated to the executive branch discretion in the maintenance or destruction of these ballots. Clearly, the Secretary of State cannot order the ballots destroyed. Her authority is merely to approve (or disapprove) a request by one of the individual supervisors to destroy the ballots. We hasten to point out that any individual supervisor may decide to keep the ballots, or to turn them over to appellants or, presumably, to any other party.
The unused ballots are not public records. Because the unused ballots are not public records, section 101.545, affording discretion to the Secretary of State and the supervisors of election concerning retention or destruction is not unconstitutional when viewed in light of article I, section 24. Moreover, even if some strained argument could be made that they are of such nature, the Legislature, by providing for the retention or destruction of unused ballots in a law enacted well *1224 before July 1, 1993, has exempted these ballots from article I, section 24. The question of whether these ballots, as artifacts of the 2000 presidential election, have historical, sociological, or political import is not before us, and could never be before a court. This is a pure policy determination, better left in the hands of the legislative branch or the executive branch. Here, the Legislature acted long before anyone could have foreseen the controversial 2000 election.
AFFIRMED.
ALLEN and WEBSTER, JJ., concur.