PER CURIAM.
 

 Matthew Bent and Jesus Mendez are minors charged as adults with attempted second degree murder in a highly publicized case in Broward County. They have each petitioned this court for a writ of certiorari seeking review of an order allowing a local newspaper, the Sun-Sentinel, access to recordings of phone conversations from the jail between the defendants and their family members and other third parties, excluding counsel. We have consolidated the cases for review and grant the petitions.
 

 The newspaper sent a public records request to the Broward Sheriffs Office (BSO), asking for recordings of all the defendants’ phone conversations since their arrests, with the exception of calls made to their attorneys. In response, defendants moved the trial court for a protective order, arguing that the recorded calls are not subject to a public records request. They also argued that releasing the calls would prejudice their defense by increasing public scrutiny on issues collateral to the case and would violate their rights to due process and a fair trial.
 

 After hearing argument from defense counsel, the newspaper, and BSO, and after allowing the attorneys to file memoran-da of law, the trial court granted the motion for a protective order in part. Citing the definition of a public record in section 119.011(12), Florida Statutes, the court concluded that although BSO is not required to record the phone calls, it does so for legitimate security reasons and doing so makes the recordings a public record. The court concluded an exemption to the records request may apply if recordings include any confessions. § 119.071(2)(e), Fla. Stat. (2009). The court directed BSO to listen to the tapes, and if any admissions were made on them, not to release them; BSO was ordered to release any other recordings to the newspaper.
 

 We agree with petitioners that the audio recordings of the defendants’ phone calls are not public records subject to release.
 

 Article I, section 24 of the Florida Constitution gives every person “the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf, except with respect to records exempted pursuant to this section or specifically made confidential by this Constitution.” Section 119.011(12), Florida Statutes defines public records as “all documents, papers, letters, maps, books,
 
 *1049
 
 tapes, photographs, films, sound recordings, data processing software, or other material, regardless of the physical form, characteristics, or means of transmission, made or received pursuant to law or ordinance or
 
 in connection with the transaction of official business by any agency.”
 
 (emphasis added).
 

 The determination of whether something is a public record is a question of law subject to
 
 de novo
 
 review and is determined on a case-by-case basis.
 
 State v. City of Clearwater,
 
 868 So.2d 149, 151 (Fla.2003);
 
 Shevin v. Byron, Harless, Schaffer, Reid & Assocs., Inc.,
 
 379 So.2d 633, 640 (Fla.1980);
 
 Rogers v. Hood,
 
 906 So.2d 1220 (Fla. 1st DCA 2005).
 

 The Florida Supreme Court has repeatedly rejected the notion that “almost everything generated or received by a public agency” is a public record.
 
 City of Clearwater,
 
 863 So.2d at 154 (quoting
 
 Shevin,
 
 379 So.2d at 640 and holding that personal e-mails transmitted or received by public employees on government-owned computer systems were not public records). Although the Legislature has broadened the definition, “public records” still refers to “records-that is, materials that have been prepared
 
 with the intent
 
 of perpetuating or formalizing knowledge” in connection with the transaction of official agency business.
 
 City of Clearwater,
 
 863 So.2d at 154 (quoting
 
 Shevin).
 
 “The determining factor is the nature of the record, not its physical location.” 863 So.2d at 154.
 
 See also Right v. Dugger,
 
 574 So.2d 1066, 1068-69 (Fla.1990) (holding that defense counsel’s files in possession of the Office of the Capital Collateral Representative were not subject to public disclosure even though the records were received in connection with the transaction of official business because these are the private records of the defendant);
 
 Media General Operation, Inc. v. Feeney,
 
 849 So.2d 3 (Fla. 1st DCA 2003) (agreeing that cellular phone records of private calls of staff employees did not constitute official business of the Florida House of Representatives).
 

 As we have previously recognized, the purpose of the Public Records Act “is to open public records to allow Florida’s citizens to discover the actions of their government.”
 
 Christy v. Palm Beach Cnty. Sheriff's Office,
 
 698 So.2d 1365, 1366 (Fla. 4th DCA 1997).
 

 The newspaper argues the Public Records Act should be liberally construed in favor of access.
 
 Lightbourne v. McCollum,
 
 969 So.2d 326, 332-33 (Fla.2007);
 
 Dade Aviation Consultants v. Knight Ridder, Inc.,
 
 800 So.2d 302, 304 (Fla. 3d DCA 2001). However, none of the cases cited by the newspaper involve any situation similar to the instant cases where criminal defendants are seeking a protective order in response to a public records request in order to ensure a fair trial and minimize prejudicial pretrial publicity. The “records” in these cases are recordings of phone calls minors made to family members and other third parties while the minors were in jail awaiting prosecution. General presumptions in favor of openness, which were intended to allow public oversight of government business, do not apply in this context.
 

 Here, the phone calls themselves are clearly not public records. The issue before us is whether BSO’s recording of the calls converts them to public records. Although monitoring of inmate calls for security purposes is related to official business of the jail, maintaining recordings of purely personal calls is not. The recordings at issue are personal phone calls, as opposed to records generated by BSO, such as mail logs or logs of phone numbers called.
 
 See City of Clearwater,
 
 863 So.2d at 155. Un
 
 *1050
 
 less the contents of the call involve a crime or security risk, “perpetuating” or maintaining these sound recordings has no connection to any official business of BSO. BSO is not using the content of petitioners’ calls to friends and family in the transaction of public business.
 

 In addition to housing convicted defendants who are serving sentences, the jail houses persons like petitioners, who are simply accused of crimes. Although inmates may have little expectation of privacy since they are informed the calls are subject to monitoring and recording, a lack of expectation of privacy does not affect whether the recordings are subject to disclosure under the Public Records Act.
 
 City of Clearwater,
 
 863 So.2d at 154. Inmates receive no notice that calls may be disclosed to the general public. The expectation that a deputy or state attorney may listen to a call is very different from an expectation that anyone and everyone could listen to the calls. Sensitive or embarrassing information, or information that would otherwise be confidential, like financial information of the inmate or the person called, could be disclosed to the public. Treating the recordings as public records allows anyone to request the recorded calls. Moreover, an accused child should be able to consult with a parent without the communication becoming a public record.
 

 The sound recordings of inmate phone calls which are not investigative material do not perpetuate or formalize knowledge in connection with official action. If the contents of the phone calls do not actually involve criminal activity or a security breach, the recordings maintained by the sheriffs office are not “material prepared in connection with official agency business which is intended to perpetuate, communicate, or formalize knowledge.”
 
 Shevin,
 
 379 So.2d at 640. The recordings of petitioners’ personal phone calls do not give the public access to information about the operations of a government agency. An inmate’s personal phone calls do not in any way reflect the actions of government and releasing the calls would not further the purpose of the Public Records Act.
 

 Because the newspaper is not entitled to production of the recorded phone calls pursuant to the Public Records Act, we grant the petitions, quash the trial court’s order, and remand these cases for further proceedings consistent with this opinion.
 

 POLEN, TAYLOR and MAY, JJ., concur.