WENTWORTH, Judge,
dissenting.
I find no fault with the trial court’s view that Commissioner Conner’s “contacts and activities with persons whose interests are centered upon agriculture or agribusiness do not in and of themselves bring him from the private realm to the orbit of transaction of official business.” However, the Commissioner’s role in the Florida Agricultural Trade Missions encompassed more than contacts with such industry persons. The fact that his actions appear to be commendable in every way does not alter our obligation to determine the point at which his records had a “connection with official agency business” under § 119.011(1); Florida Statutes.[1]
Acting as Florida Commissioner of Agriculture, he arranged meetings with domestic and foreign government officials.[2] While travelling officially as Commissioner of Agriculture on the tour mission trips, he participated in those functions, and requisitioned state per diem money to help defray costs stemming from the trips. He accepted contribution of the primary travel costs from common carriers and contribution of inclusive tour packages from travel agents.
Appellant sought certain “bank records, bank statements, bank accounts, office expense accounts and other financial information” created by Commissioner Conner in his activities with the group. Those records would apparently include information identifying the value and source of tour packages and transportation provided to him by private companies, generated by the utilization of those agencies by tour mission members.[3]
Under Chapter 119, Florida Statutes, public record status extends to “any mate: rial prepared in connection with official agency business which is intended to perpetuate, communicate or formalize knowledge of some type.” (e.s.) Shevin, etc. v. Byron, et al., 379 So.2d 633 (Fla.1980). Commissioner Conner’s own characterizations of his work with the trade mission group, as well as the lower court's characterizations, establish that for many years the financial records of the tours were handled by Commissioner Conner “in connection with official agency business.” Responding to deposition questions concerning the trips, the Commissioner stated: “... It was an event that our Department encouraged and ... participated in.” The lower court stated in its final judgment:
*1166 Commissioner Conner’s involvement was largely to coordinate and facilitate the arrangements for the tours ... This did require considerable planning and consultation with the national agricultural interests, the U.S. Department of Agriculture, the diplomatic and foreign service personnel of the United States, including the embassies and consulates which would necessarily be involved.
Commissioner Conner clearly certified that his travel on the trade mission trips was made in connection with his official duties by signing the requisition required for state reimbursement, stating:
I hereby certify or affirm that the above expenses were actually incurred by me as necessary traveling expenses in the performance of my official duties; ... and that this claim ... conforms in every respect with the requirements of § 112.-061, Florida Statutes, (e.s.)
In support of his position, appellant cites Hagaman v. Andrews, 232 So.2d 1 (Fla.1980), involving private contributions to the chief executive for his official and quasi-official use. In the context of legislative access rather than public records under Chapter 119, the Court staunchly defended the public right to information when private groups put money in the hands of public officials:
The sum and substance of the whole matter is the right of the citizen to know about the Governors Club or similar organizations, for this right instills confidence in government, just as the right to speak and be heard improves government.
There are, of course, distinctions between that case and this in both fact and legal issues presented, but I am not dissuaded from the essential analogy by the argument that greater sums of money and more direct contribution methods were involved in Hagaman. Because of the official nature of Commissioner Conner’s involvement in the trade mission, the fact that private funds and gifts of significant value were generated for a public servant’s use, and the Supreme Court’s clear policy statement governing such circumstances, I would reverse the lower court’s decision.

. The statute provides that "For the purpose of this Chapter: (1) ‘Public records’ means all ... material ... made or received ... in connection with the transaction of official business by any agency."

. From an exhibit to the Commissioner's deposition, his statement with respect to his functions, in addition to financial matters, was "My assistance mainly comes in the form of securing informal briefings with the U.S. Department of Agriculture, the agricultural attache of the host country, and the host ambassador ... A reasonable amount is included for ..reciprocal entertainment. ...”

.I would not on this appeal attempt to determine the precise limits of the statutory application to all the records in question. Because I believe the trial court erred in finding a total absence of the necessary connection with official agency business, remand would b’e required for initial consideration below of the full extent to which privacy interests, if any, might be preserved consistent with public access to those records, created at the Commissioner's direction, which were necessarily intended to formalize information connected with the Commissioner's official travel and related functions. Shevin v. Byron, infra.