Mr. Patrick G. Gilligan Attorney for the City of Ocala 1531 Southeast 36th Avenue Ocala, Florida 34471
Dear Mr. Gilligan:
On behalf of the Chief of Police for the City of Ocala, you ask substantially the following question:
Are documents seized and made evidence as part of a criminal investigation or prosecution "public records" under Chapter 119, Florida Statutes, the Public Records Law?
You state that the City of Ocala Police Department routinely seizes documents, such as forged checks, pornography, and stolen cash, that are evidence in ongoing criminal investigations and subsequent prosecutions. At the conclusion of an investigation, the department would like to be able to dispose of these documents. The question arises, however, whether such documents are public records subject to disposal restrictions imposed by the Public Records Law or whether they are simply evidence that may be disposed of consistent with the practices and procedures used for the disposal of other non-documentary evidence such as drugs or other contraband.
Florida's Constitution, in Article I, section 24, establishes a right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf.[1] Under Florida's Public Records Law, section 119.07(1)(a), Florida Statutes, every person who has custody of a public record is required to permit it to be examined by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision of the custodian of the public record or his or her designee. The custodian must furnish a copy of the record upon payment of the fee prescribed by law or, if a fee is not prescribed by law, upon payment of the actual cost of duplication.[2] "Public records" include
"[A]ll documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, data processing software, or other material, regardless of the physical form, characteristics, or means of transmission, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency."[3]
As materials that are received by the police department in connection with its official business, the items you have described would appear to fall within the definition of a public record.[4] Whether stolen cash is a public record is not readily apparent. The Florida Supreme Court has interpreted the definition of a public record in section 119.011(1), Florida Statutes, to encompass all materials made or received by an agency in connection with official business "which is intended to perpetuate, communicate, or formalize knowledge of some type."[5] Cash, in and of itself, would not appear to perpetuate, communicate or formalize knowledge. This is not to say that a situation may not arise where cash that is seized may convey information. For example, fingerprints, distinctive markings, or serial numbers on the cash may perpetuate information relative to the investigation or prosecution of the crime. I have not found, nor has my attention been directed to, a basis for distinguishing documentary evidence from other types of public records.[6]
Section 119.07(3)(b), Florida Statutes, however, exempts from public disclosure criminal intelligence information and investigative information as defined in the statute so long as it is deemed to be active.[7] Section 119.011(3)(d), explains:
"The word `active" shall have the following meaning:
1. Criminal intelligence information shall be considered `active' as long as it is related to intelligence gathering conducted with a reasonable, good faith belief that it will lead to detection of ongoing or reasonably anticipated criminal activities. 2. Criminal investigative information shall be considered `active' as long as it is related to an ongoing investigation which is continuing with a reasonable, good faith anticipation of securing an arrest or prosecution in the foreseeable future.
In addition, criminal intelligence and criminal investigative information shall be considered `active' while such information is directly related to pending prosecutions or appeals.[8] The word `active' shall not apply to information in cases which are barred from prosecution under the provisions of s. 775.15, or other statute of limitation."
Thus, to the extent the materials you have described are criminal intelligence or investigative information, they are exempt from the disclosure requirements as long as they are active — that is, they are directly related to intelligence gathering or an ongoing investigation. Once the investigation or intelligence gathering is no longer active, however, the exemption for active investigative information or intelligence information no longer applies.
In Attorney General Opinion 90-48, this office was asked whether investigative subpoenas issued by a state attorney or the Office of Statewide Prosecution as part of an active criminal investigation were public records subject to disclosure prior to becoming part of the case files maintained by the clerk of courts. Noting the statutory authority of a state attorney and the Statewide Prosecutor to summon and examine witnesses and to require the production of physical evidence and the attendant duty of the clerk of courts as an officer of the court in issuing such subpoenas, this office concluded that criminal investigative subpoenas would be exempt from disclosure, as long as they are part of an "active" criminal investigation or intelligence gathering operation. However, as specified in section 119.07(4), Florida Statutes, with designated exceptions,[9] public records made a part of a court file and not specifically closed by order of the court are subject to disclosure under the Public Records Law. Clearly any materials that become evidence at a trial would be subject to the control of the court.
The retention and destruction of public records is subject to the consent of the records and information program of the Division of Library and Information Services of the Department of State.[10] Each agency is required to establish a program for the disposal of records that do not have sufficient legal, fiscal, administrative, or archival value pursuant to retention schedules established by the division.[11] "Agency" is defined to mean "any state, county, or municipal officer, department, district, division, board, bureau, commission or other separate unit of government created or established by law."[12] For local law enforcement agencies, the division has published a General Records Schedule GS2 which may be used to determine the retention and destruction guidelines for various records.[13]
Section 847.011(7), Florida Statutes, relating to possession of obscene materials, provides:
"There shall be no right of property in any of the materials, matters, articles, or things possessed or otherwise dealt with in violation of this section; and, upon the seizure of any such material, matter, article, or thing by any authorized law enforcement officer, the same shall be held by the arresting agency. When the same is no longer required as evidence, the prosecuting officer or any claimant may move the court in writing for the disposition of the same and, after notice and hearing, the court, if it finds the same to have been possessed or otherwise dealt with in violation of this section, shall order the sheriff to destroy the same in the presence of the clerk; otherwise, the court shall order the same returned to the claimant if the claimant shows that he or she is entitled to possession. If destruction is ordered, the sheriff and clerk shall file a certificate of compliance."
This provides clear direction to a law enforcement agency for the disposition of obscene materials in its possession. Otherwise, any materials seized by the police department that perpetuate, communicate or formalize knowledge and are made a part of a criminal investigation are public records subject to the retention schedule adopted by the municipality and approved by the Division of Library and Information Services of the Department of State.
Sincerely,
Charlie Crist Attorney General
CC/tls
[1] See Art. I, s. 24, Fla. Stat., which provides in pertinent part:
"(a) Every person has the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf, except with respect to records exempted pursuant to this section or specifically made confidential by this Constitution. This section specifically includes the legislative, executive, and judicial branches of government . . . ."
[2] Section 119.07(1)(a), Fla. Stat., defines "actual cost of duplication" to mean "the cost of the material and supplies used to duplicate the record, but it does not include the labor cost or overhead cost associated with such duplication."
[3] Section 119.011(1), Fla. Stat.
[4] Cf., Weeks v. Golden, 798 So.2d 848 (Fla. 1st DCA 2001) (photographs that could not be used to identify sexual battery victim are public records that should be released).
[5] Shevin v. Byron, Harless, Schaffer, Reid and Associates, Inc.,379 So.2d 633, 640 (Fla. 1980).
[6] In light of the prohibition against possession of child pornography in s. 827.071(5), Fla. Stat., making it illegal to "knowingly possess a photograph, motion picture, exhibition, show, representation, or other presentation which, in whole or in part, he or she knows to include any sexual conduct by a child," such materials should not be provided to any individual by the custodian. Moreover, any obscene materials held by a law enforcement agency should not be provided to anyone under the age of 18.
[7] Section 119.011(3)(a), Fla. Stat., defines "criminal intelligence information" as "information with respect to an identifiable person or group of persons collected by a criminal justice agency in an effort to anticipate, prevent, or monitor possible criminal activity"; subsection (3)(b) defines "criminal investigative information" as "information with respect to an identifiable person or group of persons compiled by a criminal justice agency in the course of conducting a criminal investigation of a specific act or omission, including, but not limited to, information derived from laboratory tests, reports of investigators or informants, or any type of surveillance."
[8] See State of Florida v. Kokal, 562 So.2d 324 (Fla. 1990), in which the Supreme Court of Florida found that "appeals" does not connote the loose popular sense of the term, such that once a defendant's direct appeals become final, their criminal investigative files can no longer be considered active.
[9] Section 119.07(4), Fla. Stat., maintains the confidentiality of information revealing the identity of confidential informants, surveillance techniques, undercover personnel of any criminal justice agency, the substance of a confession until the case reaches final disposition, and attorney work product until conclusion of the litigation or adversarial administrative proceedings.
[10] Section 119.041, Fla. Stat. See also, Rules 1B-24.001, et. seq., Fla. Admin. Code, establishing standards and procedures for the scheduling and disposition of public records to promote economical and efficient management of records and to ensure that records of archival value under an agency's control are so designated and ultimately transferred to the Florida State Archives.
[11] Section 119.01(4), Fla. Stat.
[12] Rule 1B-24.001(3)(a), Fla. Admin. Code.
[13] General Records Schedule GS2 for Law Enforcement, Correctional Facilities, District Medical Examiners (January 1999), Dept. of State, Division of Library and Information Services, Bureau of Archives and Records Management (available on the internet at www.dos.state.fl.us). Questions regarding interpretation of the division's guidelines should be addressed to that agency.