511 So.2d 1023 (1987)
NEWS-PRESS PUBLISHING COMPANY, INC., D/B/a Fort Myers News-Press, Appellant,
v.
Jack KAUNE, As Duly Appointed Fire Chief for the City of Fort Myers, Dr. Nicholas Centafont, and the City of Fort Myers, an Incorporated Municipality in Lee County, Florida, Appellees.
No. 86-2186.
District Court of Appeal of Florida, Second District.
July 29, 1987.
Rehearing Denied September 3, 1987.
*1024 Steven Carta, of Simpson, Henderson, Savage & Carta, Fort Myers, for appellant.
Donald T. Ryce, Jr., of Hogg, Allen, Ryce, Norton & Blue, P.A., Coral Gables, for appellees.
CAMPBELL, Judge.
In this appeal we are called upon again to review the applicability of chapter 119, Florida Statutes (1985) [Public Records Law] as it applies to public employee personnel information. Appellant, News Press Publishing Co., Inc., appeals an order denying its petition for a writ of mandamus that would require appellees, the Fort Myers Fire Chief, Dr. Centafont and the City of Fort Myers, to permit inspection of "certain medical physical examination reports and related documents." Appellant's petition was determined on the basis of the parties' written stipulation of facts. The examination reports and related documents sought to be examined pertained to appellee City's firefighters. The actual reports and documents were in the possession of appellee, Dr. Nicholas Centafont, a health care practitioner within the meaning of section 455.241, Florida Statutes (1985). Under that section, health care practitioners must provide copies of medical reports or records to their patients or their patients' legal representatives and, with the patients' consent, to the organization seeking the exam.
Appellee Centafont was principally engaged in a private family medicine practice and had a contract with appellee City to perform medical physical examinations of the City's firefighters. The subject examinations were a specific part of the collective bargaining agreement between the City and the International Association of Firefighters on behalf of the City's firefighters. The firefighters are also enrolled in a municipal group health insurance plan that is subject to section 112.08, Florida Statutes (1985). That section became effective July 1, 1986. The examinations in question occurred in June, 1986, and appellant's request to inspect the records was made on July 2, 1986.
The examinations performed by appellee Centafont, and as provided for in the collective bargaining agreement, included blood and urine testing for drug screening, as well as medical history and physical examination, bio-medical profile, triglyceride and electrolyte testing and a complete blood count. On June 3, 1986, all of the City's firefighters were ordered by appellee Kaune, as City Fire Chief, to take part in the physical, medical, drug-testing program. The directive of appellee Kaune provided that the results of the drug-testing would be made available only to the Chief. The procedure followed was that appellee Centafont would retain the actual examination documents and would orally inform the Chief of certain results only if a firefighter's test showed some physical condition that related to the firefighter's job duties, or if both the urinalysis and subsequent tests proved positive in regard to the presence of drugs. The Chief's directive further provided that the actual physical results would be given to each employee and could be released to the employee's personal physician, but would not be made part of anyone's record or otherwise made public.
The collective bargaining agreement provided:
Those personnel that test positive will be interviewed by their immediate Supervisor or Assistant Chief, or both. Outside counseling and rehabilitation will be offered to help that person correct any problem he or she may have. Expenses as provided in City's Insurance at Employee's choice site. No discipline will be imposed for the first positive test. Those that are found to be positive will be tested again after 6 to 12 months, depending on the type and quantity of substances found.
Those refusing to take the Test when ordered will be disciplined progressively and ordered to take the test again in 30 days.
This is a Union negotiated benefit to its members in cooperation with City Management. (Emphasis supplied.)
*1025 The record also reveals that appellee Centafont provided a general statistical evaluation of the results of the testing by letter to the Risk Manager of the City. That letter was furnished to appellant. It does not contain any information related to the individuals who were tested, but only an overall statistical analysis of the test results of the employees as a group. In regard to the results of the drug-testing portion of the examination, the letter-report from appellee Centafont concluded:
I am pleased to report that in the drug screening, the closest we came to drug abuse was 1 individual who was using Phenobarbital which is a barbituate. I feel that the medication was prescribed by a physician because, the same individual was using Tagamet, a medication used to treat ulcers. Only one other individual showed drug content and this consisted of Benzodiazepine Metabolites, probably Valium, although we cannot confirm this.
It is important to our review to determine exactly what documents appellant wished to examine. The only reference in the record that identifies those documents is appellant's petition for a writ of mandamus. In that petition, appellant states that it requested appellees to allow appellant:
[T]o inspect and examine portions of the reports of the medical physical examination of the City's firefighters performed by Respondent CENTAFONT, upon the authority and instruction of Respondents KAUNE and CITY OF FT. MYERS. Such examinations were given to the fire fighters and other fire department personnel pursuant to a mandatory examination policy recently instigated by the Fire Department, as shown by the copy of the City of Ft. Myers Interoffice Memorandum, dated June 3, 1986... .
We agree with the trial judge that under the facts and circumstances of this case as are revealed to us by the record, appellant's demand was "overbroad." We make that determination based upon our further agreement with the trial judge that:
With respect to most of the documents sought by Petitioner in its Petition for Writ of Mandamus, Respondent Dr. Centafont, who has sole possession of the documents, is not acting "on behalf of" Respondents City of Ft. Myers and Kaune, but rather for the benefit of his patients. Therefore, as to these documents Dr. Centafont is not an "agency" within the meaning of F.S. 119.011(2).
While we agree with appellant that persons or agencies acting on behalf of a governmental unit are subject to the provisions of chapter 119[1], we do not conclude that the rule applies to any documents identified as being in the possession of appellee Centafont under the facts of this case.
In Shevin v. Byron, Harless, Schaffer, Reid & Associates, Inc., 379 So.2d 633 (Fla. 1980), the supreme court considered whether job search documents prepared by and in the possession of consultants working for a governmental agency would constitute "public records." Appropriate to our determination here, in Shevin, the court held "public records" for purposes of chapter 119 to be "any material prepared in connection with official agency business which is intended to perpetuate, communicate, or formalize knowledge of some type." The court concluded that what are public records would have to be determined on a case-by-case basis. Shevin, 379 So.2d at 640.
It is not disputed that appellee City had no interest in the results of the examinations performed on its firefighters unless the results indicated a job-related medical or drug problem. It would only be at that point in time, if then, that chapter 119 might require disclosure of not only the information furnished the City by appellee Centafont, but also the actual results of the examinations leading to that information. Individual firefighters' medical information unrelated to job performance simply is not a "public record" under Shevin.
As the court observed in Michel v. Douglas, 464 So.2d 545, 546 (Fla. 1985), "the right of access to personnel records as public *1026 records is not the right to rummage freely through public employees' personal lives." As a matter of fact, the manner in which Dr. Centafont conducted these examinations and maintained the records seems clearly designed to comport with the supreme court's advice in Michel: "We suggest, therefore, that public agencies monitor their personnel records and exclude information not related to their employees' qualifications for their jobs or to the performance of their jobs." 464 So.2d at 546.
Appellant raises two other issues on this appeal. Because we have reached the conclusions stated above, we are not required to address those issues. We do so nevertheless because of their potential importance. Both issues relate to the addition of subsection (7) to section 112.08, Florida Statutes (1985), by the enactment of Chapter 86-180, Laws of Florida (1986). That subsection essentially provides that all medical records of county or municipal employees enrolled in a county or municipal group or self-insured plan that are in the custody of a governmental unit shall be confidential and are exempt from section 119.07(1), Florida Statutes (1985).
We will first address the issue raised by appellant of whether application of section 112.08(7) to the facts here would be an unwarranted retroactive application of the newly enacted amendment. Section 4 of chapter 86-180 which added subsections (7) and (8) to section 112.08 became effective July 1, 1986. The documents in question came into existence in June, 1986. Appellant's request for examination was made on July 2, 1986.
Our initial response to that issue is that section 112.08(7) does not have to be applied retroactively to apply to appellant's request for examination. Normally the critical date in determining whether a document is subject to examination is the date the request for examination is made unless the legislature, after the request and before it is complied with, adopts an exemption to the Public Records Law that is remedial in nature and, thereby, to be applied retroactively. City of Orlando v. Desjardins, 493 So.2d 1027 (Fla. 1986). Under the facts of this case, we conclude that the date of request is the critical date and, therefore, even though we believe section 112.08(7) is remedial and thereby retroactive, we do not have to so determine. The request was made on July 2, 1986, and the law became effective July 1, 1986. It would be illogical to base a chapter 119 exemption of a class of public documents on the question of whether the document came into existence prior to or subsequent to the date of exemption for those requests for disclosure made thereafter. It seems to us indisputable that if the legislature determines that "all documents pertaining to subject `A' in personnel files shall be exempt," it intends, unless it specifies otherwise, that on the effective date of the law creating the exemption all such documents are exempt from any request for disclosure made thereafter regardless of when they came into existence or first found their way into the public records.
Appellant's other issue relative to the applicability of section 112.08(7) to this case is more difficult. The trial judge found, in addition to his other reasons for denying appellant's petition, that section 112.08(7) barred appellant's demand. Section 112.08(7) provides, in pertinent part, that:
All medical records and medical claims records in the custody of a unit of county or municipal government relating to county or municipal employees, former county or municipal employees or eligible dependents of such employees enrolled in a county or municipal group insurance plan or self-insurance plan shall be kept confidential and are exempt from the provisions of section 119.07(1).
On first examination of that subsection, it would seem that we should accept appellant's argument that the legislature intended the exemptions of section 112.08(7) to apply solely to medical records filed in conjunction with an employee's participation in a group insurance plan. However, further examination of the differences in the wording used in sections 112.08(7) and 112.08(8) leads us to believe that the legislature intended the clear import of its words. The legislature could have used clear and explicit language in enacting section 112.08(7) that would have conveyed the intent for which appellant argues. It chose not to do so.
*1027 It is significant to us that section 112.08(8), enacted at the same time and in the same legislative act as section 112.08(7), does have such clear and explicit language that differs greatly from that used in section 112.08(7). Section 112.08(8), in its pertinent parts, provides an exemption from section 119.07(1) for "Patient medical records and medical claims records of water management district employees ... in the custody or control of the ... district under its group insurance plan established pursuant to § 373.605... ." (Emphasis supplied.) The emphasized language clearly shows the contrast with the much broader language used in section 112.08(7), which exempts "all medical records ... relating to ... employees enrolled in a group insurance plan... ."
We thus conclude that the trial judge was correct in holding section 112.08(7) to be a bar to appellant's demand. We do not reach the question of whether that bar would disappear when a portion of those records are furnished the City for utilization for employee discipline or consideration of employee job qualifications.
Affirmed.
SCHEB, A.C.J., and SCHOONOVER, J., concur.
NOTES
[1] Byron, Harless, Schaffer, Reid and Associates, Inc. v. State ex rel. Schellenberg, 360 So.2d 83 (Fla. 1st DCA 1978), rev'd on other grounds, 379 So.2d 633 (Fla. 1980); § 119.011(2), Fla. Stat. (1985).