John Badger, Chief Counsel Kansas Department of Social and Rehabilitation Services Docking State Office Building 915 S.W. Harrison Street, Room 530 Topeka, Kansas 66612
Dear Mr. Badger:
You inquire regarding recent amendments[1] to the confidentiality provisions of the Kansas Code for Care of Children.[2] Several of your queries deal with disclosure of child in need of care (CINC) records where child abuse or neglect results in a child fatality or near fatality.[3]
K.S.A. 2003 Supp. 38-1507, as amended by L. 2004, Ch. 178, § 4(f), [hereinafter referred to as the child fatality/near fatality amendment] provides, in part:
 "(f)(1) Notwithstanding any other provision of law to the contrary, except as provided in paragraph (2), in the event that child abuse or neglect results in a child fatality or near fatality, reports or records of a child in need of care received by the department of social and rehabilitation services, a law enforcement agency or any juvenile intake and assessment worker shall become a public record and subject to disclosure pursuant to K.S.A. 45-215 . . . [the Kansas Open Records Act].
 "Within seven days of receipt of a request in accordance with the procedure adopted under K.S.A. 45-220. . . [t]he secretary shall notify any affected individual that an open records request has been made concerning such records. The secretary or any affected individual may file a motion requesting the court to prevent disclosure of such record or report, or any select portion thereof. If the affected individual does not file such motion within seven days of notification, and the secretary has not filed a motion, the secretary shall release the report or records. In reviewing such motion, the court shall consider the effect such disclosure may have upon an ongoing criminal investigation, a pending prosecution, or the privacy of the child, if living, or the child's siblings, parents or guardians. Nothing herein is intended to require that an otherwise privileged communication lose its privileged character. If the court grants such motion, the court shall make written findings on the record justifying the closing of the records.
 "(2) Nothing in this subsection shall allow the disclosure of reports, records or documents concerning the child and such child's biological parents which were created prior to such child's adoption."[4]
Your questions are, as follows:
1. As the child fatality/near fatality amendment[5] became effective on July 1, 2004, are records created prior to July 1, 2004 subject to disclosure? If so, does the Kansas Open Records Act (KORA) place a reasonable time limit on old records that are subject to disclosure?
2. As a condition of disclosure, must there first be a determination that the fatality or near fatality resulted from abuse or neglect? If so, is relying on an official determination by law enforcement, a pathologist, a physician, or the Kansas Department of Social and Rehabilitation Services (SRS) sufficient?
3. Does SRS's obligation to notify affected parties end when written notice has been sent to the last known address of the individual? Is SRS under any obligation to insure receipt of the notice?
4. What types of records in a child in need of care file would be considered privileged?
5. Is SRS obligated to divulge the name of the reporter of abuse/neglect in child fatality/near fatality cases?
6. If a child who has been adjudicated a child in need of care (CINC) is subsequently adopted, are the records in the CINC file created prior to the adoption available for public disclosure if child abuse/neglect occurring subsequent to the adoption results in the child's death or near fatality?
7. Does the child fatality/near fatality amendment include records of a child who is in the custody of another state but is placed in Kansas pursuant to the Interstate Compact on Placement of Children, K.S.A. 38-1201
et seq.?
8. Do the confidentiality amendments in Chapter 178 place Kansas in noncompliance with the federal Child Abuse Prevention Treatment Act, 42 U.S.C § 5106a ?
Background of the 2004 Amendments to the Confidentiality Provisions in the Child in Need of Care (CINC) Code
In order to address your queries, it is helpful to consider the history of the 2004 confidentiality amendments to the CINC Code.
In order to protect the privacy of the child, the CINC Code has always prescribed confidentiality for records involving children who are the subject of child in need of care reports with exceptions only for those persons and agencies with a legitimate need for the information. These records are possessed by courts, the Kansas Department of Social and Rehabilitation (SRS), juvenile intake/assessment workers, and law enforcement.[6]
In order to clarify the confidentiality statutes and make them more "user-friendly," the Judicial Council reviewed the CINC Code and recommended changes that: (1) reorganized the current confidentiality sections; (2) expanded the scope of access to CINC records; (3) imposed a fine for improper disclosure; and (4) authorized nondisclosure under certain circumstances involving a reasonable belief that harm would come to a child or another person as a result of disclosure.[7] The Judicial Council's recommendations were codified in 2004 House Bill No. 2742.[8]
Section 4(f) of H.B. 2742 [the child fatality/near fatality amendment][9] was originally part of 2003 Senate Bill No. 67.[10] The impetus for S.B. 67 was the death, in 2002, of nine year old Brian Edgar who had been in SRS custody until he was adopted by Neil and Christy Edgar.[11]
The Edgars were accused of abusing Brian and, ultimately, killing him by suffocation. At the time of Brian's death, SRS records were not generally available to the public, including the media which had an interest in the matter. The only provision in the law at that time allowing access in a child fatality case required a court order after a determination that disclosure was necessary for "a legitimate state purpose" and after consideration of the privacy of the child's siblings, parents, or guardians.[12]
The intent of the proposed child fatality/near fatality amendment was to "remove the cloud of secrecy" in order to determine whether SRS "had appropriately met its obligation to a child entrusted to its care when that child dies or nearly dies as a result of abuse/neglect."[13]
With this background in mind, we now answer your queries.
1. As the child fatality/near fatality amendment became effective on July 1, 2004, are records created prior to July 1, 2004 subject to disclosure? If so, does the Kansas Open Records Act place a reasonable time limit on old records that are subject to disclosure?
There are several jurisdictions that have addressed the situation presented here where records that were once confidential and are no longer treated as such are subject to disclosure even though created prior to the change in the law.[14]
In State, ex rel. Beacon Journal Publishing Co. v. University of Akron,[15] the Beacon Journal sought access to certain law enforcement records relating to a 1978 rape of a college student. At the time the newspaper sought access, such records were not subject to compulsory disclosure under state law. In 1980, the law was amended to require disclosure of law enforcement records under certain circumstances.[16]
The university argued unsuccessfully that law enforcement records created prior to the 1980 amendment could not be disclosed on the ground that retroactive application of the amendment would violate a statute providing that amendments cannot affect any rights or obligations previously acquired.
Noting that the amendment made no distinction for records created prior to its effective date, the court concluded that while the creation of the records took place before the amendment, the purpose of the statute was record disclosure:
"More importantly, however, is the simple fact that the Beacon Journal is not seeking to apply the statute in a retrospective manner, but is instead seeking present access to the records. Concededly, the creation of the records took place prior to the legislative amendment at issue, but this is not the conduct regulated by the statute. R.C. 149.43 deals with the availability of public records, not with the recordation function of governmental units. The date the records were made is irrelevant under the statute. Since the statute merely deals with record disclosure, not record keeping, only a prospective duty is imposed upon those maintaining public records."[17]
The Akron rationale was applied in State of Hawaii Organization of Police Officers v. City and County of Honolulu,[18] where the issue of whether police disciplinary records created prior to an amendment allowing for public disclosure fell within the amendment's ambit:
"[The amendment] provides that all government records are open to public inspection unless access is restricted . . . by law. [N]o distinction is made, nor is there any exemption, based upon the date that the record was created. We therefore hold that HRS Chapter 92F applies prospectively, requiring disclosure of records maintained by State agencies regardless of when the records came into existence."[19]
Finally, Industrial Foundation of the South v. Texas Industrial Accident Board[20] is instructive because, in interpreting the Texas Open Records Act, the Texas Supreme Court discounted the argument that an individual providing information prior to the Act has a protected expectation that access to such information will always be restricted:
"First, it is clear that the Act is intended to apply to all records kept by governmental bodies, whether acquired before or after the Act's effective date. No exception is made for records which were considered confidential prior to June 14, 1973. Second, we do not believe that information should be excepted from disclosure merely because the individual furnishing such information did so with the expectation that access to the information would be restricted. The Legislature has not, by determining that government information formerly kept confidential should be disclosed, impaired any vested right of a claimant to the confidentiality of the information. Unless there is such an impingement upon a vested right, the Legislature may require disclosure of information even though it was deemed confidential by an agency rule prior to the effective date of the Act."[21]
The child fatality/near fatality amendment provides that certain child in need of care records "received" by specified public agencies are "public records" and subject to disclosure. In the absence of a provision addressing the disclosure of records created prior to the amendment, it is our opinion that when the records were created or received by the agencies is irrelevant.
Moreover, in light of the appellate court decisions from other jurisdictions, it is our opinion that this amendment is procedural[22]
and, therefore, applies retroactively because it prescribes a process whereby the general public can obtain access to certain reports — reports previously available only by court order.[23]
Regarding your query whether the Kansas Open Records Act places a reasonable time limit on old records that are now subject to disclosure, there are no such time limits as KORA is not a records retention enactment.[24]
2. As a condition of disclosure, must there first be a determination that the fatality or near fatality resulted from abuse or neglect? If so, is relying on an official determination by law enforcement, a pathologist, a physician, or the Kansas Department of Social and Rehabilitation Services (SRS) sufficient?
The child fatality/near fatality amendment provides that "in the event that child abuse or neglect results in a child fatality or near fatality . . . reports . . . shall become a public record. . . ."[25] Both the plain language and the intent of the child fatality/near fatality amendment is to condition disclosure on a determination that "child abuse or neglect" resulted in a child fatality/near fatality.[26] While Secretary Schalansky testified that it would be helpful to clarify how that determination is to be made [i.e. alleged, suspected, as determined by agency finding, convicted etc.],[27] the legislation is silent in this regard. Therefore, the determination as to whether child abuse or neglect occurred is left to the discretion of SRS, the law enforcement agency, or the juvenile intake and assessment worker upon whom a disclosure request is made pursuant to K.S.A. 45-215 et seq.
3. Does SRS's obligation to notify affected individuals end when written notice has been sent to the last known address of the individual? Is SRS under any obligation to insure receipt of the notice?
The child fatality/near fatality amendment creates a right for "affected individuals" to attempt to prevent disclosure of certain records and reports and prescribes time limitations within which this right can be exercised. The amendment provides that within seven days of a KORA request for copies of public records, the Secretary "shall notify affected individuals." Unless an affected individual files a motion in court to prevent disclosure within seven days "of notification," the Secretary can release the records unless the Secretary has filed such a motion.
The method in which a person subject to governmental action must be given notice of that action varies depending upon the nature of the protected interest involved.[28] For purposes of answering this question, we will assume, without deciding the issue, that an "affected individual" has a liberty interest sufficient to trigger a due process right to notice.
In Mullane v. Central Hanover Bank Trust Co.,[29] the United States Supreme Court noted that while due process of law requires the opportunity to be heard, this right has little worth unless a person is informed of a pending matter and can decide whether to participate. In Mullane, the Court discussed the inadequacy of providing notice by publication and the preference for notice by ordinary mail when names and addresses of trust beneficiaries were known and available.
"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance."[30]
In a number of cases, federal courts have concluded that mailed notices are sufficient means to provide notice to parties in a wide variety of proceedings.[31] In Kansas, it is generally recognized that a letter provides notice sufficient to satisfy due process in most cases.[32]
We note that a child fatality/near fatality case that generates a KORA request could include records detailing events that occurred over several years with little subsequent contact between SRS and the numerous people involved in the matter. Thus, SRS's job may be difficult identifying and notifying individuals whom SRS believes are "affected individuals." In light of these practical issues and appellate court decisions that approve notice by ordinary mail, it is our opinion that SRS's duty to notify "affected individuals" will be satisfied by mailing notice to the last known address as reflected in records maintained by SRS.
Before we leave this area, we suggest that computation of the time periods prescribed in the child fatality/near fatality amendment should be calculated pursuant to K.S.A. 2003 Supp. 60-206 which dictates the formula for computation of time prescribed by "any applicable statute." Note should be taken that when the prescribed time is less than 11 days, intermediate Saturdays, Sundays and legal holidays are excluded from the time computation as is the day of the act from which the designated time period begins to run. Finally, subsection (e) of K.S.A. 2003 Supp. 60-206
adds an additional three days when notice is served by mail.
4. What types of records in a child in need of care file would be considered privileged?
As we do not know what types of records are generally found in a child in need of care (CINC) file, we cannot directly answer your query. We note that reports and records of a child in need of care case become "public records" subject to disclosure when child abuse or neglect results in a child fatality/near fatality. However, K.S.A. 2003 Supp. 38-1507, as amended, provides that "nothing herein is intended to require that an otherwise privileged communication lose its privileged character."[33]
Privileged communications are found in the Kansas Code of Civil Procedure at K.S.A. 60-423 et seq. Such privileges include, among others, the lawyer-client,[34] physician-patient,[35] and the identity of informer privilege.[36] Kansas law also creates privileged communications in a variety of contexts[37] including a privilege for a patient of a treatment facility regarding treatment for a mental, alcoholic, drug dependency, or emotional conditions,[38] professional counselor/client communication,[39] marriage family therapist/client communication,[40] and licensed psychologist/client communication.[41]
Should public records fall within the ambit of any of the privileged communications identified in K.S.A. 60-423 et seq., or in any other state or federal statute, a court, upon motion by SRS or any affected individual, can refuse to allow disclosure unless the privilege is waived or an exception to privilege applies.[42]
5. Is SRS obligated to divulge the name of the reporter of abuse/neglect in a child fatality/near fatality case?
Assuming that the identity of a reporter is found in child in need of care reports, new section 1 of L. 2004, Ch. 178 requires confidentiality for all court records, agency records, and law enforcement records in child in need of care (CINC) cases, except as provided in certain provisions, including K.S.A. 2003 Supp. 38-1507.[43]
K.S.A. 2003 Supp. 38-1507 addresses disclosure of records in child fatality/near fatality cases. The only exception to disclosure is for records created prior to the child's adoption that concern the child and the child's biological parents.[44] Therefore, if the record identifying the reporter "concerns" the child and the child's biological parents, the record is not subject to disclosure if it was created prior to the child's adoption.
Regarding records where the child has not been adopted, there is no specific statutory exception to public disclosure of a record identifying the reporter in a child fatality/near fatality case. The only basis that we could find is K.S.A. 60-436[45] which creates a privilege to refuse to disclose the identity of a person reporting a violation of law to law enforcement officials.[46]
The public policy behind the privilege is to "encourage those who have knowledge of crime to come forward and give information to law enforcement officers without fear of disclosure."[47]
Thus, a record identifying a reporter providing information to law enforcement regarding a crime where a child may be a victim[48] is not subject to disclosure if a court determines that K.S.A. 60-436 applies.
6. If a child who has been adjudicated a child in need of care is subsequently adopted, are the records in the CINC file created prior to the adoption available for public disclosure if child abuse/neglect occurring subsequent to the adoption results in the child's death or near fatality?
The child fatality/near fatality amendment provides, as follows:
"Nothing in this subsection [the child fatality/near fatality provision] shall allow the disclosure of reports, records or documents concerning the child and such child's biological parents which were created prior to such child's adoption."[49]
The legislative history of this amendment reveals concern that information relating to foster family placements and prospective adoptive families for a child later adopted would become open if a child died as a result of abuse and neglect subsequent to the adoption.[50] According to testimony offered during legislative hearings, families considering becoming adoptive or foster families go through extensive vetting which includes responding to personal questions. The concern was the potential dampening of recruitment efforts should such information be available for public consumption.
Unfortunately, the verbiage of the amendment is less than clear regarding the scope of documents that "concern" a child and the child's biological parents. However, in light of the legislative intent to open CINC records then child abuse/neglect results in a fatality or near fatality, it is our opinion that this provision requires nondisclosure only for those reports, records or documents created prior to the child's adoption that concern both the child and the child's biological parents.
7. Does the child fatality/near fatality provision include records of a child who is in the custody of another state but is placed in Kansas pursuant to the Interstate Compact on Placement of Children, K.S.A. 38-1201
et seq.?
Kansas participates in the Interstate Compact on Placement of Children (Compact),[51] which establishes a frame work for children from other states, who, having been determined in need of such state's protection because of abuse/neglect, are placed in Kansas. The sending state or agency retains jurisdiction over all matters relating to the custody, supervision, care, treatment, and disposition of the child.[52] Our understanding is that SRS's role is limited, after investigating the family or foster care placement, to granting or denying placement in Kansas. If permission is granted, SRS supervises the placement until permanent placement is achieved through an adoption or guardianship. Should problems arise during the placement, SRS cooperates with the other state which, in some situations, may require the child being returned to such state.
The child fatality/near fatality provision is limited to "reports or records of a child in need of care" received by SRS and other agencies. "Child in need of care" is a term of art defined at K.S.A. 2003 Supp.38-1502 that identifies circumstances under which a child appears to require the protection of the State of Kansas.[53] A child can "appear"[54] to be in need of care which may or may not lead to a formal adjudication as a child in need of care.[55]
A child placed in Kansas by another state is generally not a "child in need of care" because the child is already in the legal custody of another state that has determined that the child is in need of its protection. Thus, the records held by SRS regarding the child are not "child in need of care" records. The only circumstance under which a child in the custody of another state may come within the ambit of a "child in need of care" is if SRS or law enforcement investigates an allegation of abuse or neglect pursuant to K.S.A. 38-1523. As allegations of child abuse or neglect could trigger a CINC investigation, any report generated as a result of such investigation would qualify for disclosure if, as a result of abuse or neglect, the child dies or is seriously injured.
While the child fatality/near fatality amendment is not clear on this issue and reasonable minds could differ, the intent of the amendment is to require accountability for agencies involved with children who appear to be in need of care and/or are adjudicated as such. Therefore, as the child fatality/near fatality provision is limited to child in need of care reports, it is our opinion that records involving a child placed in Kansas by another state that has continuing jurisdiction over the child are not records subject to public disclosure unless reports are created, subsequent to the placement, involving an investigation by SRS or law enforcement into allegations of child abuse/neglect and, as a result of child abuse or neglect, the child dies or is seriously injured.
8. Do the confidentiality amendments in Chapter 178 place Kansas in noncompliance with the federal Child Abuse Prevention Treatment Act, 42 U.S.C § 5106a ?
42 U.S.C. § 5106a is a federal funding statute authorizing grants for states with child abuse laws that address areas outlined in the statute.[56] Eligibility requirements include assurances by the State that it is enforcing a state law relating to child abuse and neglect that includes, among other things, "methods to preserve the confidentiality of all records in order to protect the rights of the child and of the child's parents or guardians" that are available only to certain individuals and entities "statutorily authorized by the State to receive such information pursuant to a legitimate State purpose."[57]
While the confidentiality amendments have expanded access to records in child in need of care cases to include guardian ad litems, court appointed special advocates for the child, citizen review boards, agents of the Kansas Juvenile Justice Authority, foster and adoptive parents, and certain legislative committees, we have no reason to believe that there is not a legitimate state purpose in statutorily authorizing these individuals and entities to receive certain information relative to child in need of care cases.
With regard to the child fatality/near fatality amendment allowing public disclosure of certain records in child fatality/near fatality cases, federal law allows state law to provide for "public disclosure of the findings or information about [a] case of child abuse or neglect which has resulted in a child fatality or near fatality."[58] Therefore, it is our opinion that the confidentiality amendments in L. 2004, Ch. 178 do not impact eligibility for federal grant funds under 42 U.S.C. § 5106a.
Sincerely,
 PHILL KLINE Attorney General of Kansas
 Mary Feighny Assistant Attorney General
PK:JLM:MF:jm
[1] L. 2004, Ch. 178.
[2] K.S.A. 38-1501 et seq.
[3] "'Near fatality' means an act that, as certified by a person licensed to practice medicine and surgery, places the child in serious or critical condition." L. 2004, Ch. 178, § 4(f)(1).
[4] Emphasis added.
[5] L. 2004, Ch. 178, § 4(f).
[6] K.S.A. 38-1506; K.S.A 2003 Supp. 38-1507; K.S.A. 38-1508.
[7] Supplemental Note on House Bill 2742, as amended by Senate Committee on Judiciary; Minutes, Senate Judiciary Committee, March 11, 2004; Attachments 9 and 10.
[8] Later codified at L. 2004, Ch. 178.
[9] Now codified at L. 2004, Ch. 178, § 4(f).
[10] Codified at L. 2004, Ch. 144.
[11] Minutes, Senate Judiciary Committee, February 6, 2003, Attachment 2.
[12] K.S.A. 38-1507(h) (repealed L. 2004, Ch. 178, § 7).
[13] Note 10. See Minutes, House Committee on Corrections/Juvenile Justice, March 17, 2004 ("this legislation . . . is designed to enhance accountability.")
[14] Doe v. Sundquist, 2 S.W. 3d 919 (Tenn. 1999); State of Hawaii Organization of Police Officers v. City and County of Honolulu,927 P.2d 386 (Hawaii 1996); News-Press Publishing Co., Inc. v. Kaune,511 So.2d 1023 (Fl. 1987); State, ex rel. Beacon Journal Publishing Co. v. University of Akron, 415 N.E.2d 310 (Ohio 1980); Industrial Foundation of the South v. Texas Industrial Accident Board, 540 S.W.2d 668 (Tx. 1976).
[15] 415 N.E.2d 310 (Ohio 1980).
[16] "All public records shall be promptly prepared and made available to any member of the public. "'Public record' means any record . . . except confidential law enforcement investigatory records. . . ." Confidential law enforcement investigatory record' includes only certain designated law enforcement record." Any law enforcement record not so designated is a "public record."
[17] 415 N.E.2d at 313.
[18] 927 P.2d 386 (Hawaii 1996).
[19] Id. at 398-399. See News-Press Publishing Co., Inc. v. Kaune,511 So.2d 1023 (Fl. 1987) (amendment creating an exemption under state open records law for disclosure of public employee medical records is retroactive: "It seems to us indisputable that if the legislature determines that 'all documents pertaining to subject 'A' in personnel files shall be exempt,' it intends . . . that on the effective date of the law creating the exemption all such documents are exempt from any request for disclosure made thereafter regardless of when they came into existence. . .") But see Tew v. Topeka Police Fire Civ. Serv. Comm'n, 237 Kan. 96 (1985) (Kansas Open Records Act (KORA) applied prospectively; exemption for personnel records not applicable for request for disclosure of personnel records made prior to KORA).
[20] 540 S.W.2d 668 (Tx. 1976).
[21] Id. at 677-678. See Doe v. Sundquist, 2 S.W.3d 919 (Tenn. 1999) (retrospective application of legislation allowing disclosure of adoption records to certain persons does not impair vested rights of birth parents).
[22] "The general rule of statutory construction is that a statute will operate prospectively. . . . [T]his rule is modified where the statutory change is merely procedural or remedial in nature and does not prejudicially affect the substantive rights of the parties." Ryco Packaging Corp. v. Chapelle Int'l, Ltd., 23 Kan.App.2d 30, 43
(1996). Procedural statutes generally relate to "the manner and order of conducting suits — in other words, the mode of proceeding to enforce legal rights." Rios v. Bd. of Public Utilities of Kansas City,256 Kan. 184, 191 (1994).
[23] K.S.A. 2003 Supp. 38-1507(h) (repealed L. 2004, Ch. 178, § 7). We note that while Tew v. City of Topeka Police Fire Civil Service Comm'n, 237 Kan. 96 (1985) concluded that the Kansas Open Records Act was prospective because it "[created] substantive rights and liabilities not encompassed by the prior Kansas Public Records Inspection Act," the child fatality/near fatality amendment is not on the same level as KORA in terms of creating substantive rights and liabilities. KORA executes the Legislature's public policy that all public records are open with procedures for obtaining access, exemptions from disclosure, penalties, and enforcement options. The child fatality/near fatality amendment simply creates a procedure for accessing certain public records and objecting to disclosure.
[24] "Nothing in this act [KORA] shall be construed to require the retention of a public record nor to authorize the discard of a public record." K.S.A. 45-216(b).
[25] Emphasis added.
[26] See Minutes, Senate Judiciary Committee, February 6, 2003, Attachment 2, (Testimony of Senator David Adkins). See also 42 U.S.C. § 5106a(b)(2)(A)(x) (federal grant funds to the State of Kansas require an assurance that the State's child abuse/neglect program contains "provisions which allow for public disclosure of the findings or information about the case of child abuse or neglect which has resulted in a child fatality or near fatality." Emphasis added.
[27] Minutes, Senate Judiciary Committee, February 6, 2003, Attachment 3 (Testimony of Secretary Schalansky).
[28] State v. Lewis, 23 Kan.App.2d 758, rev. on other grounds,263 Kan. 843 (1998) (when fundamental rights are involved, substantial diligence in attempting to notify is required; when less significant rights are involved, less effort is required). See In re L.S.,14 Kan.App.2d 261 (1990); Tulsa Professional Collection Services v. Pope, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988).
[29] 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
[30] Id. at 339 U.S. 306, 313 (internal citations omitted).
[31] Weigner v. City of New York, 852 F.2d 646 (2nd Cir. 1988), cert. denied 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989), and cases cited therein (city's action in mailing notices of proposed tax foreclosure actions by ordinary first-class mail to owner's last known address sufficient to meet the requirements of due process); see also Tulsa Professional Collection Services v. Pope, 485 U.S. 478,108 S.Ct. 1240, 99 L.Ed.2d 565 (1988) (notice by mail to decedent's known creditors is not unduly burdensome under due process standards; rejecting publication as sole basis for notice).
[32] Sage v. Williams, 23 Kan.App.2d 624, 630 (1997).
[33] L. 2004, Ch. 178, § 4(f)(1) (emphasis added).
[34] K.S.A. 60-426.
[35] K.S.A. 60-427.
[36] K.S.A. 60-436.
[37] K.S.A. 23-605 (mediation of domestic disputes); 65-1654
(pharmacist/patient communication).
[38] K.S.A. 65-5601 et seq. See K.S.A. 2003 Supp. 65-5603 (exceptions to privilege).
[39] K.S.A. 65-5810.
[40] K.S.A. 65-6410.
[41] K.S.A. 74-5323; 74-5372.
[42] K.S.A. 60-437; K.S.A. 2003 Supp. 65-5603.
[43] Identity of the reporter is specifically prohibited from disclosure even from individuals and entities allowed access. See K.S.A. 2003 Supp. 38-1507, as amended by L. 2004, Ch. 178, §§ 4(c) (d); K.S.A. 38-1508, as amended by L. 2004, Ch. 178, § 5(d).
[44] K.S.A. 2003 Supp. 38-1507, as amended by L. 2004, Ch. 178, § 4(f)(2).
[45] "A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this state or of the United States to a representative of the state . . . charged with the duty of enforcing that provision. . . unless the judge finds that: (a) the identity of the person furnishing the information has already been disclosed; or (b) disclosure of such person's identity is essential to assure a fair determination of the issues. The privilege extends to documenting records as well as testimony."
[46] "Nothing herein [in a child fatality/near fatality case] is intended to require that an otherwise privileged communication lose its privileged character." K.S.A. 2003 Supp. 38-1507, as amended by L. 2004, Ch. 178, § 4(f)(1).
[47] Palmer v. Brown, 242 Kan. 893, 899 (1988); State v. Clovis,248 Kan. 313, 323 (1991) ("what is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law").
[48] E.g. K.S.A. 2003 Supp. 21-3604 (child abandonment); K.S.A. 21-3608
(child endangerment); 21-3609 (child abuse); K.S.A. 2003 Supp. 21-3612
(contributing to a child's misconduct); K.S.A. 21-3501 et seq. (sex crimes).
[49] Emphasis added.
[50] Minutes, Senate Judiciary Committee, February 6, 2003, Attachment 7 (Testimony of KVC Behavioral Health Care).
[51] K.S.A. 38-1201 et seq.
[52] K.S.A. 38-1202; Article III and V.
[53] Those circumstances include a child without adequate parental care, a child who has been abused, a child not attending school, a runaway, and a child who has violated certain laws.
[54] K.S.A. 2003 Supp. 38-1503 ("proceedings concerning any child who appears to be a child in need of care shall be governed by this code. . .").
[55] K.S.A. 38-1556.
[56] Eric L. By and Through Schierberl v. Bird, 848 F.Supp. 303
(D.N.H. 1994).
[57] 42 U.S.C. § 5106a(b)(2)(A)(viii)(VI).
[58] 42 U.S.C. § 5106a(b)(2)(A)(x).